# Exhibit A

**Letters Bates stamped GVAR 000435 and GV000146, respectively**

# *Stand Up For California!*
## "Citizens making a difference"
### www.standupca.org

P.O. Box 355
Penryn, CA  95663

Feb 2, 2010

Paula Hart, Acting Director
Office of Indian Gaming
U. S. Department of the Interior
1849 C Street
Washington D.C.
Fax. 202-273-3153

### RE:  Guidiville Indian Lands Determination

Dear Ms. Hart:

This letter is to follow-up on our phone conversation of Friday January 26, 2010.

As we discussed, it has been published in a newspaper of general circulation in the Bay Area that the Department of the Interior has an internal memo granting a positive Indian lands determination for the Guidiville Band of Pomo Indians of Talmage, Mendocino County. The site of the restored lands is 120 miles from its existing Rancheria outside of its aboriginal territory in the City of Richmond, Contra Costa County.

As we discussed, I have requested a copy of the internal memo. However, since this memo is not a final agency action and is subject to change, I am advised, that there is *NO* Indian lands determination. Yet, as we discussed on Friday, we both know the memo exists.

This creates significant confusion in the eyes of the public. Further it creates a lack of confidence in the integrity of the process for making a determination of Indian lands at the Bureau of Indian Affairs. Where is the evidence that the Guidiville Band of Pomo as a matter of historical fact have resided continuously in the specific site of the casino project? Where is the evidence of Indian title to the land? Is this evidence strong and compelling and the claim on the land continuous and current? Or…is it nothing more than an option with the real estate developer or gaming investors for a casino.

I recognize, that the new administration is making a thorough effort to perform a top to bottom review of the off reservation gaming policy. I recognized that their efforts are now further complicated by the U. S. Supreme Court ruling of *Carcieri v Salazar* as well as the unique Rancheria issues here in California. Nevertheless, I am hoping at the very least a written response to the following questions is possible.

1

GVAR000435

1. Which agency (Solicitor of the DOI or the NIGC) will make or has made the Indian Lands Determination for the Guidiville Band of Pomo?

2. What is the date of the current internal Indian lands determination memo?

3. Will the BIA or NIGC consult with the State of California over the determination of Indian lands as Chairman Phil Hogan did in 2006 on three controversial off reservation gaming applications?

4. Is there a legal opinion or other documents regarding the effect of the Carcieri decision on the Guidiville fee to trust acquisition proposed by a tribal resolution?

IGRA, as a law is not tribal property; it is intended to create a balance between tribal rights to conduct gaming and rights of the state and the community not to have gaming established over their strong objections. Creating new or re-classifying Indian lands for the sole purpose of the establishment of a casino was not the intent or spirit in which IGRA was written, debated or enacted.

Stand Up for California would sincerely appreciate a timely response.

Sincerely

Cheryl A. Schmit – Director
916-663-3207
cherylschmit@att.net
www.standupca.org

2

GVAR000436

    

August 10, 2010

The Honorable Dianne Feinstein
United States Senate
331 Hart Senate Office Building
Washington, D.C. 20510-0504

Dear Senator Feinstein:

The undersigned representatives of California tribal, city and county governments1 write together to express our grave concern about what appears to be imminent unlawful action by Department of the Interior ("DOI") officials: approval of tribal-government gaming on newly-acquired lands that do not legally qualify for that privilege. Specifically, DOI appears poised to ignore the broad prohibition of the Indian Gaming Regulatory Act ("IGRA"), DOI regulations, and DOI and National Indian Gaming Commission precedent against authorizing tribal government gaming on lands taken into trust after 1988. We are informed that as to at least one tribe (the Guidiville Band of Pomo Indians), a high-ranking DOI official has formally recommended approval of such gaming based upon IGRA's "restored lands exception" [25 U.S.C. 2719(b)(1)(B)(iii)] despite that fact that the Tribe's new urban commercial property, which is more than 100 miles away from its homeland and would require leapfrogging over several other tribes located between Contra Costa and Mendocino Counties, would clearly not qualify for that or any other exception to the prohibition against gaming on lands taken into trust after October, 1988. Approving these acquisitions would set a terrible precedent, unleashing a torrent of applications to establish urban casinos to the detriment of other tribes, cities and counties, and undermining the very bases of tribal sovereignty itself.

The "restored lands" exception is one of the most frequently used justifications for taking off-reservation land into trust for gaming purposes, but it is also at the heart of what has become known as "reservation shopping." Federal regulations and numerous prior determinations by DOI and the National Indian Gaming Commission have established that in order for a tribe to qualify for that exception, the tribe must have a "significant historical connection" to the land it wants as a casino site. Title 25 Code of Federal Regulations section 292.2 states: "Significant historical connection means the land is located within the boundaries of the tribe's last reservation under a ratified or unratified treaty, or a tribe can

---

1The Northern California Counties Tribal Matters Consortium is a collaboration between Napa, Solano, and Sonoma Counties to oppose federal fee to trust polices which facilitate "reservation shopping" and to promote government to government agreements with tribes, with historic ties to the land, to mitigate off-reservation impacts of development projects.

GVAR000147

Guidiville Letter
August 10, 2010
Page 2 of 3

*demonstrate by historical documentation the existence of the tribe's villages, burial grounds, occupancy or subsistence use in the vicinity of the land.*"

The making of restored lands determinations in situations such as that of Guidiville, which is attempting to have land taken into trust more than 100 miles away from its established rural tribal land base in order to build a casino on a commercially attractive urban site to which it has no historical connection, would violate the clear intent of Congress. It would also undermine the very concept of tribal sovereignty, which is anchored upon the bedrock principle of exercise of tribal governmental authority over tribal lands and the people within those lands. In Guidiville's case, the Tribe is relying entirely upon anecdotal information about the *lineage* (not tribal affiliation) of *its individual members*. It makes no claim whatsoever of any historical connection of *the Tribe, as a sovereign entity,* to the land because there simply is none. Rendering a "restored lands" determination on lands over which the tribe in question has *never* exercised sovereign authority infringes on the sovereignty of all tribes, both gaming and non-gaming, and of local City and County governments; it also is fundamentally unfair to tribes that have struggled to utilize their existing rural land bases for their economic self-sufficiency, and would be devastated by the establishment of an urban casino that would effectively interdict much of their customer bases.

If one tribe with no significant historical connection to its proposed casino site is permitted to use the restored lands exception, others are sure to follow – to Richmond, Sacramento, San Francisco, Oakland, Los Angeles, San Diego and any other location that looks profitable. And, if this exception is used to justify taking urban land into trust for gaming for some tribes with no historic connection to the land, how could DOI justify declining to take such lands into trust for some of California's largest, but most remote tribes? This apparent shift in DOI policy that would allow for such a restored lands determination would completely disrupt the balance Congress established in IGRA. This implicit policy shift expanding the application of "restored lands" determinations would harm both existing gaming tribes whose casinos are properly located on their reservations, and the communities into which developers would insert their tribal partners' casinos.

The DOI policy change that is apparently imminent would be contrary to the law, the best interests of the great majority of tribes, the State of California, city and county governments and local communities. We therefore urge you to communicate to the Department of the Interior your opposition to: 1) any violation of the well-established and well-founded limitations Congress, the Department of the Interior and the NIGC have imposed upon application of the restored lands exception; and 2) approval of the Guidiville restored lands application and all other similarly unwarranted restored lands applications. We stress that time is of the essence. For further information please feel free to contact Anthony Cohen, (707) 523-1181, acohen@cfk.com.

110749v2

Guidiville Letter
August 10, 2010
Page 3 of 3

Thank you for your interest in this issue of great importance to California tribal and local governments.


Brad Wagenknecht,
Supervisor, County of Napa
Chairman, Northern California Counties Tribal
Matters Consortium

Genoveva Garcia Calloway
Mayor, City of San Pablo


Matt Rodriguez
City Manager, City of San Pablo

s/ Nelson Pinola, Tribal Chairman
Manchester Band of Pomo Indians


cc:  Kenneth Salazar, Secretary of Interior, DOI
     Larry Echo Hawk, Assistant Secretary-Indian Affairs, DOI
     George T.  Skibine, Bureau of Indian Affairs

EXECUTIVE SECRETARIAT
OFFICE OF THE

2010 AUG 18  PM 1:10

RECEIVED

4907193

110749v2

GVAR000149