United States District Court
Northern District of California

| | |
|---|---|
| GUIDIVILLE RANCHERIA OF CALIFORNIA; a federally recognized Indian tribe; UPSTREAM POINT MOLATE, LLC, a California Limited Liability Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; KEN SALAZAR, the Secretary of the Department of the Interior; LARRY ECHOHAWK, the Assistant Secretary - Indian Affairs; THE CITY OF RICHMOND, a California Municipality,<br><br>Defendants. | Case No.: CV 12-01326-YGR (KAW)<br><br>ORDER REGARDING JULY 2, 2013 JOINT DISCOVERY LETTER |

Upstream Point Molate, LLC ("Upstream") seeks an order compelling the production of certain legal memoranda authored by the City of Richmond's ("City") in-house and outside counsel. (Joint Ltr.; Dkt. No. 164 at 1). The City argues that the legal memoranda are subject to the attorney-client privilege and thus protected from disclosure. (*Id.* at 3). Upstream asserts that the City waived the attorney-client privilege as to the legal memoranda when a councilmember quoted a portion of their contents in a letter he sent to an outside third party. (*Id.* at 2).

This discovery dispute was referred to the undersigned. (Order of Reference; Dkt. No. 167). A hearing on the matter was held on Septembers 5, 2013. For the reasons set forth below, the court finds that the remaining portions of the legal memoranda are subject to the attorney-client privilege and thus protected from disclosure.

## I. BACKGROUND

City Councilmember Thomas K. Butt sent a letter to Deputy Attorney General Janill L. Richards concerning a Land Disposition Agreement ("LDA") between the City and Upstream.

(Joint Ltr., Ex. A). In that letter, Councilmember Butt quoted the contents of certain legal memoranda prepared by the City's in-house and outside counsel, stating his disagreement with those attorneys' conclusions and seeking the opinions of Deputy Attorney General Richards on the topic in light of a settlement agreement she purportedly authored in a related case. (*Id.* at 2). Included as a separate attachment to the letter are two additional pages containing further legal analysis regarding the LDA,[1] presumably an additional excerpt from the legal memoranda at issue. (*Id.* at 7, 8). The City Council acknowledged the exchange between Councilmember Butt and Deputy Attorney General Richards during an open City Council meeting, at which time the City Council also discussed the LDA and related issues. (Joint Ltr., Ex. B). During earlier discovery in this case, the City produced a copy of Councilmember Butt's letter. (Joint Ltr. at 2).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The information sought "need not be admissible at trial" so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Federal Rule of Evidence 501 provides: "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." However, in cases "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005) (citations omitted). *See also United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009) (reversing district court's order due to erroneous application of state, not federal, privilege law). Federal common law recognizes the attorney-client privilege. *See United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Ruehle*, 583 F.3d at 609. That privilege attaches "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the

---

[1] Upstream included a copy of Councilmember Butt's letter, including the two-page attachment, as Exhibit A to the parties' joint letter, Dkt. No. 164. Upstream asserts that Councilmember Butt quoted at least two memoranda in that letter.

2

protection be waived." *Graf*, 610 F.3d at 1156. "The party asserting the privilege bears the burden of proving each essential element." *Id.* (internal citations and quotations omitted). "Under federal law, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 609.

### III. DISCUSSION

Only the element of waiver is at issue here. *See* Joint Ltr. Upstream contends that the following events occasioned a waiver of the attorney-client privilege: (1) Councilmember Butt's disclosure of a portion of the contents of the legal memoranda in his letter to Deputy Attorney General Richard; (2) the ratification by the City Council of Councilmember Butt's conduct "at the time of his communication and again on May 18, 2010" during a subsequent open City Council meeting; and (3) the City's Council's production of Councilmember Butt's letter during earlier discovery in this case. *Id.* at 2. The City asserts that none of these events effected a waiver of the attorney-client privilege. *Id.* at 3, 4.

An entity can assert the attorney-client privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981) (citing *United States v. Louisville & Nashville R. Co.*, 236 U.S. 318, 336, 35 S. Ct. 363, 59 L. Ed. 598 (1915)); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985) ("It is by now well established . . . that the attorney-client privilege attaches to corporations as well as to individuals.") (citation omitted). As an entity, a municipal organization may invoke the privilege. *Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) ("[A] municipality can assert the attorney-client privilege in civil proceedings."). *See* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS §§ 73, 74 (2000).

"The privilege of governmental entities may be asserted or waived by the responsible public official or body. The identity of that responsible person or body is a question of local governmental law." *Id.* § 74 cmt. e. *See Ross*, 423 F.3d at 605 ("[G]enerally in conversations between municipal officials and the municipality's counsel, the municipality, not any individual officer[], is the client."); *In re Grand Jury Subpoena*, 886 F.2d 135, 138 (6th Cir. 1989) (a city and its city council are the same entity for the purposes of the attorney-client privilege); *Chase v. City of Portsmouth*, 236 F.R.D. 263, 265 (E.D. Va. 2006) (concluding that because the

1    appointment and removal of the city attorney was made at the pleasure of the city council, the city
2    council was the city attorney's client and thus the only entity that could assert or waive privilege);
3    Patricia C. Tisdale & Erin M. Smith, *The Maverick Council Member: Protecting Privileged*
4    *Attorney-Client Communications from Disclosure*, 23 Colo. Law 63, 64 (1994) ("Where legal
5    advice is provided to a city council during executive session, the client . . . is the municipal
6    organization itself, and not the individual city council members. Therefore, only the city may
7    waive the privilege.) (footnotes omitted). The Brown Act provides that "[a] person may not
8    disclose confidential information that has been acquired by being present in a closed session
9    [including a closed session concerning pending litigation] . . . to a person not entitled to receive it,
10   unless the legislative body authorizes disclosure of that confidential information." CAL. GOV'T
11   CODE § 54963(a).

12       A. <u>Waiver by Disclosure.</u>

13       Upstream's first argument is that Councilmember Butt, by sending his letter to Deputy
14   Attorney General Richards, waived the attorney-client privilege as to the remaining portions of
15   the legal memoranda quoted in that letter. Joint Ltr. at 1, 2. In response, the City asserts that "a
16   city council can only authorize waiver of the privilege by vote or other similar approval by the
17   council *as a whole*—the unilateral, unauthorized acts of a single councilmember do not constitute
18   a waiver." *Id.* at 3 (emphasis in original).

19       The court agrees. As the City points out, the Brown Act prohibits disclosure of
20   "confidential information that has been acquired by being present in a closed session [including a
21   closed session concerning pending litigation] . . . to a person not entitled to receive it, unless the
22   legislative body authorizes disclosure of that confidential information." CAL. GOV'T CODE §
23   54963(a).[2] This provision is not dispositive as to whether the elements of the attorney-client

---

[2] The City has not established that the legal memoranda at issue were first transmitted to the City Council during a closed session of the type contemplated by the Brown Act. The court presumes this was the case. However, even if the legal memoranda were shared in some other context, the Brown Act helps define the contours of an individual councilmember's authority generally. When considered along with the case law on the issue, the Brown Act, even if only indirectly, bolsters the City's claim that Councilmember Butt lacked the authority to effect a waiver of the attorney-client privilege.

4

privilege are met in this case. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1126 n.4 ("[T]he fact that the communications were made under the auspices of the Brown Act is only evidence of the elements of the privilege; it is not dispositive to the federal court's determination of [the] application of the privilege."). However, it does help resolve a crucial issue, namely, whether Councilmember Butt, acting as an individual councilmember and without the City Council's approval, had authority to waive the privilege as to the remaining portions of the legal memoranda quoted in his letter. The court concludes that he did not. *See, e.g., Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 479 (2008) ("If a board president cannot execute even minor contracts and 'other papers' without the board's approval, we conclude that the board president cannot waive the attorney—client privilege-a much more significant decision—on behalf of the school district without the board's approval."); *Interfaith Housing Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399-1400 (D. Del. 1994) (applying state privilege law and agency principles to reach the conclusion that a councilmember's statement during a deposition was not an effective waiver of the town council's attorney-client privilege). Upstream's first argument therefore fails.

B. <u>Waiver by Ratification.</u>

Second, Upstream argues that the City Council ratified Councilmember Butt's waiver when it discussed, at an open City Council meeting,[3] Councilmember Butt's letter, the Deputy Attorney General Richards' response letter, and voted to require the City Attorney to answer a question regarding conflicting interpretations of the LDA. Joint Ltr. at 1, 2. This argument lacks merit.

"Ratification is demonstrated through knowing acceptance after the fact by the principal of an agent's actions." *Bowoto*, 312 F. Supp. 2d. at 1247. Ratification may be express or implied

---

[3] In the joint letter, Upstream argues that ratification occurred "at the time of [Councilmember Butt's] communication and again on May 18, 2010." Joint Ltr. at 2. By definition, ratification occurs "after the fact" and thus could not have occurred at the time of Councilmember Butt's communication. *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d. 1229, 1247 (N.D. Cal. 2004).

5

"based on conduct of the purported principal from which an intention to consent or adopt the act may be fairly inferred." *Id.* at 1247 (citation omitted).

In its papers, the City clarifies that Councilmember Butt did not share the letter he sent to Deputy Attorney General Richards with the City Council but that he shared the letter he received from her. At a minimum, then, the City Council was aware of the existence of Councilmember Butt's letter but not its specific contents. An agenda memorandum circulated to the City Councilmembers in anticipation of the May 18, 2010 meeting supports this. *See* May 18, 2010 Agenda Memo. from Mayor McLaughlin to Members of the Richmond City Council at 1. That memo reads: "Councilmember Butt sent a letter dated December 13, 2009, to the AG's office asking for the AG's Office's understanding of the City's obligations under the LDA. The letter Councilmember Butt received in reply from the AG's office dated December 15, 2009, is attached." *Id.*

The transcript of the May 18, 2010 also reveals the extent to which the City Council squarely addresses Councilmember Butt's letter to Deputy Attorney General Richards. The relevant part of the transcript reads:

> [R]ecently Councilmember Butt and [Mayor McLaughlin] have done some research with the Attorney General's office; and his office has weighed in on this. And he has—and they have said it's public information to share this, so I'm not—I'm not broaching any confidence here. The City—I'm going to read from an email that Janelle [*sic*] Richards, who's the supervising deputy attorney general in the Attorney General's office[,] says.

Joint Ltr., Ex. B (Tr. of May 18, 2010 City Council Meeting at 99:24-100:7).

As to the vote referenced in Upstream's second argument, the transcript reads: "I would move that we direct the City Attorney to publicly answer one simple question, which is, [i]s there substantial disagreement amongst attorneys with the Attorney General-opinion?" *Id.* at 110:1-5. After a vote by the City Council, the City Attorney responded as follows: "I'll state it this way: There's not agreement with—by outside counsel with what we have and what we have used with the view of the Attorney General." *Id.* at 111:10-13.

The court finds none of this rises to the level of ratification. Nothing in the record shows that the City Council had reviewed Councilmember Butt's letter or that it otherwise had

6

knowledge of its contents. The agenda memo and the meeting transcript establish that, at best, the City Council was aware that Councilmember Butt had sent a letter to Deputy Attorney General Richards regarding his understanding of the City's obligations under the LDA. Nothing in the record indicates that the City Council was informed that quotes from the privileged legal memoranda were included in Councilmember Butt's letter. There are insufficient facts to establish that the City Council ratified Councilmember Butt's conduct absent some showing that the City Council was, at a minimum, aware of the specific contents of Councilmember Butt's letter. *Cf. Bowoto*, 312 F. Supp. 2d. at 1247 (denying summary judgment where plaintiff's allegation that media campaign defending agent's conduct could support a claim of ratification). For these reasons, Upstream's second argument fails.

### C. Wavier by Production.

It is undisputed that the City produced Councilmember Butt's letter during earlier discovery in this case. On these grounds, Upstream invites the court to conclude that this destroys the attorney-client privilege that would have otherwise attached to the remainder of the legal memoranda quoted in that letter. Joint Ltr. at 1, 2. The court declines to do so.

"Voluntary disclosure of part of a privileged communication is a waiver as to the remainder of the privileged communication about the same subject." *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976). *See United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990); *Weil v. Inv./Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 24-25 (9th Cir. 1981); *Bd. of Tr.'s of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006).

As the City points out, its production of the letter in discovery is of no moment. At the time it produced the letter in discovery, the letter had already been in the hands of a third party, Deputy Attorney General Richards, and since 2009, when Councilmember Butt originally sent the letter to her. The City's production of the letter does not change the fact that the document was already in the hands of a Deputy Attorney General, and consequently, a public record. The significance of Councilmember Butt's lack of authority to effect a waiver of the attorney-client privilege is what saves the City from having to disclose the remaining portions of the legal

memoranda at issue notwithstanding its production of Councilmember Butt's letter. Had Councilmember Butt been imbued with such authority, the same result would not have obtained.

In short, the acts of a single councilmember, acting unilaterally and without the requisite authority, cannot erode the protections of the City Council's attorney-client privilege. *See* CAL. GOV'T CODE § 54963(a); *Ross*, 423 F.3d 596 at 605; *In re Grand Jury Subpoena*, 886 F.2d at 138; *Chase*, 236 F.R.D. at 265; *Sampson*, 262 F.R.D. at 479. The City Council must be able to rely on the principle that a waiver of that privilege may only be effected by way of established protocol. *See Upjohn*, 449 U.S. at 393. This conclusion comports with the Supreme Court's guidance on the nature of the attorney-client privilege:

> [I]f the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Id.* Accordingly, Upstream's third argument fails.

## IV. CONCLUSION

For the reasons set forth above, the court finds that the remaining portions of the legal memoranda quoted in Councilmember Butt's letter are subject to the attorney-client privilege and thus protected from disclosure.

IT IS SO ORDERED.

DATE: September 20, 2013

_____
KANDIS A. WESTMORE
United States Magistrate Judge