United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE GUIDIVILLE RANCHERIA OF CALIFORNIA, AND UPSTREAM POINT MOLATE LLC**,<br><br>      Plaintiffs,<br><br>    **vs.**<br><br>**THE UNITED STATES OF AMERICA, KEN SALAZAR,** *et al.***,**<br><br>And<br><br>**THE CITY OF RICHMOND,**<br><br>      Defendants.<br><br>And Counterclaims. | Case No.: 12-cv-1326 YGR<br><br>**ORDER GRANTING MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE AND GRANTING MOTION TO COMPEL THE RETURN OF AN INADVERTENTLY RELEASED DOCUMENT (DKT. NO. 188) AND DISSOLVING STAY (DKT. NO. 110)** |

On May 28, 2013, Defendants United States of America, Ken Salazar, and Larry Echohawk ("Federal Defendants") filed the Motion for Return of Inadvertently Released Document. (Dkt. No. 105.) Federal Defendants sought the return of the document under Federal Rule of Evidence 502(b) on the grounds that it was inadvertently disclosed as part of the voluminous administrative record in this matter, and that it is covered by both the attorney-client and deliberative process privileges. In conjunction with the motion, Federal Defendants filed a motion to seal the document, which had been filed in the public record in connection with a motion made by plaintiffs in this matter, subsequent to its inadvertent release.

The Court referred the motion to Magistrate Judge Kandis Westmore pursuant to 28 U.S.C. § 636(b)(1)(A). The magistrate judge heard argument on August 15, 2013, and issued a decision denying the motion on August 23, 2013.

The magistrate judge's order set forth two determinations. First, she found that the document was not covered by attorney-client privilege because it was disclosed prior to the litigation, and therefore the privilege was waived. Second, she found that the document was covered by the qualified deliberative process privilege, but ordered production because Plaintiffs' need for the evidence overrode the government's interest.

Federal Defendants filed their Motion for Relief From Pretrial Order on September 6, 2013. (Dkt. No. 188, "Motion for Relief".) Pursuant to Local Rule 72-2, the Court ordered the parties to file additional briefing on September 24 and October 1, 2013. For the reasons stated below, the Court finds that the document is covered by the attorney-client privilege and that no disclosure of the document or its contents has been established such that waiver of the privilege can be found. Further, Plaintiffs have not established a need for the document that overrides the deliberative process privilege. Accordingly, the Court **GRANTS** the Motion for Relief and **GRANTS** the Motions for Return of Inadvertently Released Document and to Seal.[1]

**I.   APPLICABLE STANDARD**

A magistrate judge's order on a non-dispositive motion may be modified or set aside if it is "clearly erroneous or contrary to law." FRCP 72(a). The magistrate's factual determinations are reviewed for clear error, and the magistrate's legal conclusions are reviewed to determine whether they are contrary to law. *United States v. McConney,* 728 F.2d 1195, 1200-1201 (9th Cir.1984) (overruled on other grounds by *Estate of Merchant v. CIR,* 947 F.2d 1390 (9th Cir.1991)). The clear error standard allows the court to overturn a magistrate's factual determinations if the court reaches a "definite and firm conviction that a mistake has been committed." *Wolpin v. Philip Morris Inc.,* 189 F.R.D. 418, 422 (C.D.Cal.1999) (citing *Federal Sav. & Loan Ins. Corp. v. Commonwealth Land Title Ins. Co.,* 130 F.R.D. 507 (D.D.C.1990)). The magistrate's legal conclusions are reviewed *de novo* to determine whether they are contrary to law. *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). Accordingly, the Court will review Magistrate Judge Westmore's decision to determine

---

[1] Plaintiffs argued, in opposition to the motion, that a decision on the privilege waiver should be stayed pending determination of Guidiville's Motions to Complete the Administrative Record and to Supplement the Record, and possible additional discovery, should Plaintiffs prevail on those motions. The Court declines to do so.

whether any factual findings are "clearly erroneous" or any legal conclusions are "contrary to the law."

## II.   BACKGROUND

On May 14, 2013, Plaintiffs filed their Motions to Supplement and for Discovery. (Dkt. Nos. 100-101.) After reviewing Plaintiffs' Motions and the exhibits thereto, Federal Defendants' counsel noticed that Plaintiffs cited to a document, Bates stamped GVAR 001343-001354, which had been included in the administrative record and mislabeled in the index as a letter from the Department to the Tribe's Chairwoman. In fact, the document was a draft of the "Indian Lands Determination" prepared by the Solicitor's Office regarding the Point Molate area at issue in this litigation for the Assistant Secretary of the Indian Affairs Office ("the ASIAO"). In particular, the Solicitor's Office prepared a recommendation for the ASIAO as to whether land qualified for gaming under the Gaming Act. The ASIAO was to use this recommendation in preparing his final Indian Lands Determination. The inadvertently released draft Indian Lands Determination reflected the legal advice and opinion of the Solicitor's Office regarding qualification of the Tribe's land as "restored land" under the Gaming Act. The document was to be submitted from the Office of Indian Gaming to the Assistant Secretary – Indian Affairs for an ultimate decision. The document never received final approval from within the Solicitor's Office, was never adopted as the Office of Indian Gaming's recommendation, and was never accepted or issued by the ASIAO. (Declaration of Nancy Pierskalla, Dkt. No. 106-1, ¶4.) This document was inadvertently included in the administrative record rather than labeled as privileged and included in the privilege log. All other drafts were marked as privileged and withheld from inclusion in the administrative record. (Declaration of Reuben Schifman, Dkt. No. 105-1, ¶4.)

According to Federal Defendants, as part of the preparation of the administrative record, agency attorneys reviewed documents produced by the ASIAO, the Bureau of Indian Affairs, the Office of Indian Gaming, and the Office of the Solicitor of the Department of the Interior. Compiling the records took several months. (*Id*. at ¶9-10.) Agency attorneys reviewed for relevance and then reviewed the documents against for determinations of privilege. (*Id.* at ¶ 10.) After scanning and conversion of the documents to a producible electronic form, the documents were again

3

reviewed by a Department of Justice attorney to ensure agreement with agency attorneys' privilege determinations and labeling. (*Id.* at ¶12-14.) The administrative record was some 62,000 pages in total and produced in electronic format. Despite this review process, the document at issue was mislabeled and not included on the privilege log (the "Production Disclosure").

Within a day of learning that the document had been included in the administrative record, Federal Defendants requested that Plaintiffs return the inadvertently privileged document. (Schifman Dec., Exh. A.) Plaintiffs would not agree.

**III.   DISCUSSION**

### A.     Attorney-Client Privilege and Waiver

The attorney-client privilege protects confidential communications between an attorney and client made for the purpose of obtaining and giving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It is one of the oldest recognized privileges. *Id.* The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* It applies to attorney-client relationships within the government, in which the agency is the client and the government attorney is counsel. *See In re Cnty. Of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) (citation omitted); *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997); *Ariz. Rehab. Hosp., Inc. v. Shalala*, 185 F.R.D. 263, 269 (D. Ariz. 1998). Indeed, the privilege has been found to apply with "special force" in the government context since the policies underlying the privilege particularly favor encouraging government officials formulating policies in the public's interest to consult with counsel in conducting that public business. *See Modesto Irrigation Dist. v. Gutierrez*, 1:06-CV-00453 OWWDLB, 2007 WL 763370 (E.D. Cal. Mar. 9, 2007) (citing *Erie*, 473 F.3d at 419). The types of communications protected by the privilege may include such things as: confidential communications made by a client to an attorney to obtain legal services, *United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir. 1995); legal advice given in the course of representing the client, *United States v. Bauer*, 132 F.3d 504, 509-09 (9th Cir. 1997); facts divulged by a client to his attorney in order to put the attorney in a position to render legal advice, *Upjohn*, 449 U.S. at 391; and correspondence or statements from the attorney that "reveal the motive of the client in seeking

representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law . . . ." *Olano*, 62 F.3d at 1205.

Under FRE 502(b), when disclosure of a communication or information covered by the attorney-client or work product privilege is made in a federal proceeding, it will not operate as a waiver of the privilege if:

> (1)  the disclosure is inadvertent;
> (2)  the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3)  the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). In addition, the extent of any waiver may be limited under FRE 502(a), which states:

> [w]hen the disclosure is made in a federal proceeding … and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

"[A] party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship *and* the privileged nature of the communication." *United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir.2009) (quoting *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir.1997)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (quoting *United States v. Martin,* 278 F.3d 988, 999 (9th Cir.2002)).

An eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *Ruehle*, 583 F.3d at 607. "The party asserting the privilege bears the burden of proving each essential element." *Ruehle*, 583 F.3d at 608

(citing *United States v. Munoz,* 233 F.3d 1117, 1128 (9th Cir.2000), *superceded on other grounds as stated in United States v. Van Alstyne,* 584 F.3d 803, 817 (9th Cir.2009)).

On review, a court's conclusion regarding whether "statements are protected by an individual attorney-client privilege is 'a mixed question of law and fact which this court reviews independently and without deference" to the lower court. *Ruehle,* 583 F.3d at 606 (quoting *Bauer,* 132 F.3d at 507). "Factual findings are reviewed for clear error." *Id.* (citing *Al–Haramain Islamic Found., Inc. v. Bush,* 507 F.3d 1190, 1196 (9th Cir.2007)). A finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Graf*, 610 F.3d at 1157; *United States v. Hinkson,* 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 577 (1985)). "[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure. As the Supreme Court has repeatedly cautioned, "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *United States v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999) (quoting *Upjohn,* 449 U.S. at 393).

Here, Federal Defendants moved under FRE 502(b) for a determination that the disclosure they made in producing the administrative record in this proceeding was inadvertent and did not operate as a waiver of the attorney-client privilege. As a threshold matter, Defendants assert, and Plaintiffs do not dispute, that the document at issue was prepared by attorneys in the Solicitor's Office for the Assistant Secretary – Indian Affairs—the attorney's client—during the course of legal representation, for the purpose of providing legal advice regarding whether the Tribe's land qualified as a "restored land." The gravamen of Plaintiffs' argument is that the privilege was waived through previous disclosure of the document to third parties. The Federal Defendants disagree.

### A. Waiver By Production In Administrative Record – FRE 502(b)

The Court looks first to the showing required under FRE 502(b) to establish that the inadvertent Production Disclosure *in this litigation* did not waive the attorney-client privilege. Federal Defendants submitted evidence that their disclosure was inadvertent, and that counsel took reasonable steps to review the documents produced as part of the administrative record to prevent inadvertent disclosure of privileged materials. (Schifman Dec. ¶4, 9-14.) Federal Defendants also

6

submitted the declaration of Nancy Pierskalla, the Acting Director of the Office of Indian Gaming within the Department of the Interior but was sent to other attorneys and officials within the Department of the Interior. (Pierskalla Dec., Dkt. No. 106-1, at ¶ 4.) Federal Defendants also submitted evidence to show that they promptly sought the return of the document from Plaintiffs once they learned that it had been included in the administrative record. (Schifman Dec., ¶¶ 5-8.) The Court finds that Federal Defendants' evidentiary showing unambiguously establishes that the Production Disclosure of the document as part of the administrative record was inadvertent; that Federal Defendants took reasonable steps to prevent disclosure; and that they promptly took reasonable steps to rectify the error upon learning of it. Thus, the Production Disclosure of the document as part of the administrative record did not operate as a waiver of the attorney-client privilege.[2]

The Court now addresses the focus of Plaintiffs' waiver arguments, where they contend that Federal Defendants did not preserve the attorney-client privilege due to disclosure of the document long *before this litigation*, and thereby waived the privilege.

**B.      Waiver By Prior Disclosure**

In support of their contention of a prior waiver, Plaintiffs submit a February 2, 2010 letter from Cheryl Schmit, the director of an organization called "Stand Up for California," to the Acting Director of the Office of Indian Gaming. (Dkt. No. 103-22 at 2.) That letter states that it is "RE: Guidiville Indian Lands Determination" and that it is a "follow-up on our phone conversation of Friday January 26, 2010." (*Id.*) The letter further states, in pertinent part:

> As we discussed, it has been published in a newspaper of general circulation in the Bay Area that the Department of the Interior has an internal memo granting a positive Indian lands determination for the Guidiville Band of Pomo Indians of Talmage, Mendocino County…
>
> As we discussed, I have requested a copy of the internal memo. However, since this memo is not a final agency action and is subject to change, I am advised, that

---

[2] Magistrate Judge Westmore did not reach the question of whether the disclosure within the administrative record met the requirements for FRE 502(b) in her decision. (*See* Order at 9:1-3: "Because the document at issue is not attorney-client privileged, and the deliberative process privilege should be waived, the Court need not reach the issue of disclosure under Federal Rule of Evidence 502(b).")

>there is <u>NO</u> Indian Lands determination.  Yet, as we discussed on Friday, we both know that the memo exists.

*Id.* (emphasis in original).  Plaintiffs also cite to an August 10, 2010 letter from a coalition of county and city governments and the Manchester Band of Pomo to Senator Dianne Feinstein.  That letter states: "We are informed that as to at least one tribe (the Guidiville Band of Pomo Indians), a high-ranking DOI official has formally recommended approval of such gaming based on IGRA's 'restored lands exception.'" (Dkt No. 103-20 at 2.)

It is a well-established principle that the party asserting the attorney-client privilege bears the ultimate burden to establish the privilege.  *See, e.g., Ruehle*, 583 F.3d at 608.  However, where an opposing party asserts that the privilege has been waived, that party shares a burden of production to support waiver.  *United States v. Chevron Corp.*, C 94-1885 SBA, 1996 WL 444597 *3 (N.D. Cal. May 30, 1996) (citing *GTE Directories Service Corp. v. Pacific Bell Directory,* 135 F.R.D. 187, 192 n. 2 (N.D.Cal.1991)); *see also* 2 Paul R. Rice, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES (2012), § 9:22 ("The prevalent, albeit unstated, practice appears to be to impose the initial burden of establishing the basic elements on the privilege proponent [and then]… the burden of going forward with evidence shifts to the opponent to establish…facts upon which a reasonable person could find that the privilege has been relinquished.")  The importance of this "shared burden" approach arises from the conundrum that, if the party seeking discovery bears no burden whatsoever to show how the privilege was waived, then the only way a party asserting the privilege can establish non-waiver is by proving a negative, *i.e.* disproving any and every possible basis for waiver.  *Chevron,* 1996 WL 444597 at *3.  Placing the entire burden on the party asserting the privilege is "unsustainable."  *Id.*  Thus the party asserting privilege bears the initial burden of proving that the communication in question is privileged.  *Id.*  Then, if the party seeking discovery of the document asserts that the privilege was waived, that party must offer evidence of a waiver.  "Once the opponent has proffered evidence that the claimed privilege has been waived, the party asserting attorney-client privilege bears the ultimate burden of proving that the privilege was not waived" in order to preserve the privilege.  *Id.* (citing *Weil v. Investment/Indicators, Research & Management,* 647 F.2d 18, 25 (9th Cir.1981), *In re Grand Jury Proceedings,* 73 F.R.D. 647, 652 (M.D.Fla.1977)).

8

Here, Federal Defendants submitted evidence in connection with their original motion that the document at issue was prepared by an attorney in the Solicitor's Office of the Department of the Interior and was sent to other attorneys and officials within the department. The document provided legal advice regarding the Tribe's land's qualification as restored. The document meets the basic criteria for protection as attorney-client privileged. Thus, the burden shifts to Plaintiffs to establish a basis for finding that the privilege was waived.

Plaintiffs base their pre-litigation disclosure argument on two letters – the Stand Up for California letter and the County coalition letter. The Court finds that this evidence does not establish that the document at issue, or its content, was disclosed. The Court examines each letter in turn.

The Stand Up for California letter says "*it has been published in a newspaper* of general circulation in the Bay Area *that the Department of the Interior has an internal memo* granting a positive Indian lands determination for the Guidiville Band." (Dkt. No. 103-22 at 2, emphasis added.) The proferred letter says that the "internal memo" "is not a final agency action and is subject to change" and that the writer understood "that there is *NO* Indian Lands determination." (*Id.*) The letter requests a copy of the "internal memo" and states that "we both know that the memo exists." (*Id.*) First, by its explicit terms, the Stand Up for California letter does not establish that any document was disclosed to anyone, only that the letter's author believes one "exists." Nothing in the letter indicates that the "internal memo" or its contents were actually revealed to anyone. It only says that a newspaper has indicated that such a document exists and that it is "positive." The referenced newspaper itself is not part of the record here. Second, nothing in the letter identifies the 20-page draft legal analysis document at issue here as the "internal memo" referenced therein. Indeed, the letter offers no information to connect the "internal memo" to the document here. Other than that the memo is "positive," no specific details, advice or opinion in the "internal memo" are revealed.[3]

The County Coalition letter to Senator Dianne Feinstein fares no better. That letter states that the letter's signatories had "grave concern[s] about what appears to be imminent unlawful action by

---

[3] This stands in contrast to *Dukes*, in which the disclosure was established by a newspaper article publishing details of the findings and legal analysis of the memorandum at issue. *Dukes,* 2013 WL 1282892 at *1. Even there, the court did not find a waiver of the attorney-client privilege. *Id.*

Department of the Interior ("DOI") officials: approval of tribal-government gaming on newly-acquired lands that do not legally qualify for that privilege," and that "DOI appears poised" to take that action. (Dkt. 103-20.) It states that "[w]e are informed that as to at least one tribe (the Guidiville Band of Pomo Indians), *a high-ranking DOI official has formally recommended* approval." (*Id.,* emphasis added.) Again, this letter does not indicate that *any* particular privileged communication has been disclosed, much less *the* document at issue here. And, importantly, there is nothing in the letter to even indicate that the authors of the County coalition letter were informed as to the *contents* of the document at issue here or any other memo. There is only a non-specific reference to what "appears" to be an "imminent unlawful" approval or "formal recommendation" on the Tribe's application, without establishing the basis for that "appearance."

Determining what statements or communications constitute a disclosure for purposes of establishing waiver of the privilege requires a careful examination of the facts and circumstances of the alleged disclosure. General assertions that an attorney has "examined a certain matter," without revealing the substance of the attorney's advice, do not constitute a disclosure sufficient to establish waiver of the privilege. *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989); *see also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) (client does not waive privilege by disclosing subjects he discussed with attorney); *Quiksilver, Inc. v. Kymsta Corp.*, 247 F.R.D. 579, 584 (C.D. Cal. 2007) (no disclosure of privileged communications where deposition testimony did not reveal the substance of any attorney-client communications but simply noted that plaintiff received legal advice from counsel regarding marketing); *Rauh v. Coyne*, 744 F. Supp. 1181, 1185 (D.D.C. 1990) (privilege not waived merely because defendants disclosed counsel's conclusion that an internal investigation did not determine the truth of plaintiff's allegations).[4] Where "there is no showing that the *content* of [the] legal advice was shared, [the party opposing the privilege] has not met its prima

---

[4] Authority under California Evidence Code 912(a), while not binding here, holds similarly. *S. Cal. Gas Co. v. Pub. Utilities Com.*, 50 Cal. 3d 31, 49 (1990) (disclosure of the fact of attorneys' review of agreement and conclusions arrived at by attorneys to government agency was not disclosure for purposes of waiver; mention of counsel's opinion of the agreement's enforceability during information negotiations, without revealing specific content, was not a disclosure.) This Court may properly look to persuasive authorities under section 912(a), which was the model for FRE 511. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996).

facie burden" to show that a disclosure of privileged information occurred. *Sleep Science Partners v. Lieberman,* 09-cv-4200 CW(BZ), 2010 WL 4316687 (N.D.Cal. Oct. 26, 2010) at *1 (emphasis supplied).

For instance, in *Sleep Science*, the plaintiffs contended that the privilege had been waived because defendants had obtained legal advice about whether plaintiffs' former CEO could work for defendants, and later had conversations with investors regarding the legal implications of working with the former CEO. However, plaintiffs did not show that defendants shared the actual content of the legal advice, only that they had obtained such advice. This showing was insufficient to establish a disclosure of the privileged legal advice. *Id.* at *1. Thus, since the party seeking to overcome the privilege has not made a showing that any confidential communications were disclosed, the court did not need to reach the ultimate burden, on the party asserting the privilege, to show non-waiver. *Id.* at *1-2.

Here, the magistrate judge's order starts from the assumption that the disclosure of the document at issue here, or its contents, was "apparent."[5] In reviewing the record, the Court cannot agree that the evidence in the record here supports a conclusion that the draft document, or its contents, were disclosed to anyone. Indeed, it is only through the apparent happenstance of an inadvertent disclosure of this draft document that Plaintiffs could generate any notion that these two letters refer to this document. Thus, the Court must reach the firm conclusion that there is no support for a factual finding that the document at issue here, or its content, was disclosed. It appears, at most, that some information may have been leaked by an unknown source, but that is far different from an actual disclosure of the document or its content so as to establish a basis for waiver of the attorney-client privilege. Thus, on review of the record, the Court finds clearly erroneous the

---

[5] The magistrate judge's order indicates that Federal Defendants conceded the evidence showed third parties were informed of the contents of the document. The order states that "Defendant argues that … the letter merely shows that they were informed *as to its contents*." (Magistrate Judge's Order at 4:11-13.) The Court cannot locate in the record any concession to that effect by Federal Defendants.

11

magistrate judge's factual determination that the document or its contents were disclosed previously.[6]

Because the Court concludes that there is no evidence of a disclosure of the document at issue here, and therefore no prima facie showing of waiver of the privilege, the Court need not and does not reach the issue of Federal Defendants' burden to establish that it did not waive the privilege by failing to take adequate steps to prevent its disclosure.[7]

### B. Deliberative Process Privilege

The Court further finds that the magistrate judge's decision to deny return of the document despite the deliberative process privilege was also contrary to the law under the facts here. The parties agreed, and the magistrate judge found, that the document at issue here was a pre-decisional draft memorandum and therefore covered by the deliberative process privilege. However, the magistrate judge noted that the qualified nature of the privilege meant that the privilege could be overcome by a showing that the Plaintiffs' "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure," citing *F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

---

[6] Further, assuming the letters could be construed to show a disclosure of confidential information, there is also no evidence to suggest the disclosure was voluntary. Involuntary disclosures do not automatically waive privilege. *See, e.g., United States v. de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992) ("it is clear that the privilege was not lost through the government's discovery of the letter in the course of executing its search warrants"); *Dukes v. Wal-Mart Stores,* 01-cv-252 CRB(JSC), 2013 WL 1282892 at *4 (involuntary leak of privileged memorandum to newspaper did not result in waiver). The identity of the source of the leak, and that person's authority to waive the privilege, would bear upon whether a disclosure should be considered involuntary and whether the privilege should be upheld. *See Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) (requiring identity of confidential informant to be provided in order to determine whether leaked memo should be considered privileged).

[7] In connection with the motion for relief, Federal Defendants submitted an additional evidence to establish that the Office of Indian Gaming, Department of the Interior, followed policies and took precautions to protect confidentiality and prevent inadvertent disclosure of privileged materials such as the document at issue. (Declaration of Paula Hart, Dkt. 188-2.) Federal Defendants offered to produce such evidence in connection with the proceedings before the magistrate judge. However, the magistrate judge's order found that Federal Defendants' offer to submit such evidence was untimely. Because there is no evidence of a disclosure of the document at issue here, the Court has not considered this evidence on review of the magistrate judge's order.

The magistrate found that the document was relevant to, and indeed went "to the very heart" of, the Plaintiffs' case. (Order at 8:3-8.) The magistrate judge also found that the Plaintiffs' need for the document outweighed the government's interest in not having a frank and independent discussion of contemplated policies and decisions hindered by the possibility of disclosure.

It is fundamental that in an case under the Administrative Procedure Act, courts are "empowered to review only an agency's *final* action, and the fact that a local agency representative's preliminary determination is later overruled at a higher agency level does not render the decisionmaking process arbitrary and capricious." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 645 (2007). The fact that an agency considers one position in a draft document, but ultimately adopts the opposite position, is not, on its own, evidence of arbitrary or capricious decisionmaking. *See, e.g., Butte Envtl. Council v. U.S. Army Corps of Eng'rs,* 620 F.3d 936, 946 (9th Cir. 2010); *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1145 (9th Cir. 2007). The policies underlying the deliberative process privilege itself favor allowing an agency to consider and freely air views on multiple potential decisions and points of view before reaching a final decision is made by the official with the authority to do so. *See Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (deliberative process privilege "allow[s] agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny"). Such debate and deliberation could not occur if any difference of opinion along the way could establish a basis for finding the final decision arbitrary. Moreover, a party seeking to show that a decision was not made in good faith must show more than just that the agency changed its mind. "Agencies are entitled to change their minds," and evidence that they have does not indicate bad faith but only that the "process worked just as it should." *Butte Envtl. Council*, 620 F.3d at 946. A change of position is not enough to establish the "strong showing" required to show that the agency acted in bad faith or abused its discretion. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

Here, Plaintiffs did not offer facts or authorities to establish that the draft memorandum at issue, expressing a view contrary to the final agency determination, was so necessary to the proof of their claims against the Federal Defendants that the deliberative process privilege should be

overridden. To the contrary, the relevant authorities suggest that such a draft memorandum, standing on its own, would be of negligible consequence to such a claim. Thus the Court finds that the magistrate judge's decision to override the privilege on this record was a clear error of fact and contrary to law.

**IV.  CONCLUSION**

Based upon the foregoing, the Court **GRANTS** the Motion for Relief.

Therefore, the Court **GRANTS** the Motion for Return of Inadvertently Released Document (Dkt. No. 105) and **GRANTS** the Motion to File Under Seal (Dkt. No. 115). Further, the Court **ORDERS** as follows:

(1) Plaintiffs shall return the document (GVAR 001343-001354) and all copies thereof to Federal Defendants within seven (7) days of this Order.

(2) Federal Defendants shall lodge an amended administrative record and file an amended privilege log withholding the document at issue within fourteen days (14) of this Order.

(3) The document filed as Exhibit F to the Declaration of Scott Crowell, Dkt. No. 103-19, is **ORDERED SEALED**. The document is covered by the attorney-client privilege, which establishes compelling reasons for sealing it from the public record. The Clerk is directed to take all actions necessary to seal the document and remove it from the public docket;

(4) The stay ordered in the Court's Order Granting Joint Stipulation to Stay Briefing and Modify Briefing Schedule (Dkt. No. 110) is **DISSOLVED**. The parties shall contact the courtroom deputy for Magistrate Judge Westmore regarding a schedule for further briefing and hearing on the previously stayed discovery motions (Dkt. No. 100 and 101).

**IT IS SO ORDERED**.

This Order terminates Docket No. 188.

Dated: December 13, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**