UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GUIDIVILLE RANCHERIA OF CALIFORNIA, AND UPSTREAM POINT MOLATE LLC**,<br><br>  Plaintiffs,<br><br>  **vs.**<br><br>**THE UNITED STATES OF AMERICA, SALLY JEWELL,** *et al.***,**<br><br>And<br><br>**THE CITY OF RICHMOND,**<br><br>  Defendants.<br><br>And Counterclaims. | Case No.: 12-cv-1326 YGR<br><br>**ORDER DENYING: (1) PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; AND (2) PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT** |

Presently before the Court are two motions filed by Plaintiff Upstream Point Molate, LLC ("Upstream"). The first is for leave to file a motion for reconsideration of this Court's December 12, 2013 Order Granting City of Richmond's Motion for Judgment on the Pleadings. (Dkt. No. 219; *see also* Dkt. No. 212, "Order Granting JOP".) The second is a motion for leave to file a fourth amended complaint to cure deficiencies in the complaint that were the basis for that Order. (Dkt. No. 221.)

Having carefully considered the papers submitted and the pleadings in this action, as well as the matters judicially noticeable, and for the reasons set forth below, the Court **DENIES** the motions.

## I. BACKGROUND

The procedural and factual background of this case is extensive and has been set forth in prior orders and the Court presume familiarity. (*See, e.g.,* Order Granting JOP at 2-9.) The Court previously granted judgment on the pleadings in favor of Defendant City of Richmond on Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and specific performance as stated in Plaintiffs' Third Amended Complaint. The Court did not grant leave to amend, but instead dismissed the claims and found that only Plaintiffs' claim for declaratory relief against the City survived the motion. (Order Granting JOP at 21.)

Plaintiff now seeks to file a Fourth Amended Complaint ("Proposed 4thAC") to allege additional facts regarding the City's alleged improper exercise of its discretion and failure to negotiate in good faith for an alternative to the rejected casino project. Specifically, Plaintiff seeks to add allegations regarding:

(1) statements during the settlement negotiations of the CESP I litigation which purportedly show that the purpose of entering into the settlement agreement was to ensure compliance with CEQA only, not to provide the City's discretion regarding the ultimate approval of a project at Point Molate. (Proposed 4thAC, Dkt. No. 221-1, at ¶¶ 65-72);

(2) an order by a state court judge, denying the application of Chevron for a temporary restraining order to block the City from entering into the Land Development Agreement ("LDA"), offered to show that the federal government's intent was to transfer the property to the City for economic development purposes (*Id.* at ¶¶ 53 & 54);

(3) additional facts to show that the City failed to negotiate in good faith for an alternate proposal pursuant to Section 2.8 of the LDA (*Id.* at ¶¶ 84-116);

(4) numerous other projects where the City issued a statement of overriding considerations or a negative declaration to find that the project should be approved under CEQA despite adverse environmental findings, in contrast to its refusal to approve Upstream's development plans for Point Molate (*Id.* at ¶¶ 48-55, 73 & 119 - 121); and

2

(5) allegations that the City's exercise of discretion under CEQA was "premature" and a pretext, since it had decided, before the EIR was certified, that it would not allow a casino project (*Id.* at ¶¶ 103, 117 & 118).

**I.   MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

Northern District Civil Local Rule 7-9 sets forth the requirements for seeking leave to file a motion for reconsideration. No party may notice a motion for reconsideration without first obtaining leave of court. N.D. Cal. Civ. L.R. 7-9(a). Under Local Rule 7-9(b), a moving party seeking reconsideration must show specifically:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of such order; or
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

N.D. Cal. Civ. L.R. 7-9(b). Upstream brings its motion based upon both: (1) discovery of new, materially different facts; and (2) manifest failure by the Court to consider material facts or dispositive legal arguments.

As to the new and different facts, Upstream does not show that there are materially different facts nor that it could not, with reasonable diligence, have alleged at the time of the motion for judgment on the pleadings. The "new facts" cited by Upstream are pleadings in the CESP I Litigation and a May 1, 2006 Declaration of City Manager Bill Lindsay submitted in that litigation concerning that the intentions of the parties in entering into the settlement agreement. Upstream contends that it only learned of these "new facts" in October 2013. This argument is nonsensical. Upstream offers no plausible reason that it would not have been fully aware of the pleadings and filings in that prior litigation at the time in 2006, and certainly by the time it filed its Third Amended Complaint in 2013. The request for leave to file the motion for reconsideration on these grounds is, therefore, **DENIED**.

3

1 As to the manifest error of law grounds, Upstream argues that the Court made errors by: (1) 2 misunderstanding the scope of the City's discretion under the LDA and when that discretion 3 attached; (2) misunderstanding the City's obligations under Section 2.8 of the LDA concerning 4 negotiation in good faith of an alternative proposal; (3) misunderstanding plaintiffs' pleading 5 obligations; (4) misunderstanding that plaintiffs are "entitled by law for [*sic*] leave to amend." 6 (Proposed Motion for Reconsideration at 11:24-25.)

7 On the procedural issues, Upstream's arguments fail. A simple "notice" pleading alleging 8 breach of contract will not survive dismissal if the allegations do not state a plausible claim. "[A] 9 complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is 10 plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks 11 omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the 12 court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

13 The Court finds Upstream's arguments of substantive error lacking in merit. Upstream 14 contends that the Court has misconstrued the City's discretion and obligations under the LDA and 15 under CEQA. It further argues that it has sufficiently alleged the City "exercised its discretion" 16 prematurely, prior to completion of the CEQA review process, by taking various actions inconsistent 17 with approval of the casino project. Upstream's arguments now are no different than those made in 18 opposition to the motion for judgment on the pleadings, which the Court found insufficient. The 19 terms of the LDA and the Settlement Agreement contradict Upstream's understanding of the City's 20 obligations. Moreover, Upstream's allegations that the City failed to negotiate in good faith or 21 comply with Section 2.8 of the LDA are conclusory and insufficient to state a claim. Again, as set 22 forth below, Upstream has never offered allegations to show that it could cure its pleading defects 23 then, or now.

24 Further, leave to amend is not automatic upon granting a motion for judgment on the 25 pleadings under Rule 12(c), but is within the Court's discretion. *Cf. In re W. States Wholesale* 26 *Natural Gas Antitrust Litig.*, 715 F.3d 716, 739 (9th Cir. 2013) (leave to amend under FRCP 15(a) 27 granted liberally, but not automatically). Where amendment would be futile, the court should not 28 grant leave to amend. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Smith v. Pac. Props. & Dev.*

4

*Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004). As addressed more fully in connection with the motion for leave to amend, below, the Court finds amendment futile here even after a full exposition of how Upstream would amend the complaint. Denial of leave to amend in connection with the motion for judgment on the pleadings, where no such exposition was made, does not demonstrate "manifest error."

As a consequence, the motion for leave to file a motion for reconsideration is **DENIED** on the grounds of manifest failure by the Court to consider material facts or dispositive legal arguments.

## II.   MOTION FOR LEAVE TO AMEND

### A.   APPLICABLE STANDARD

"Although Federal Rule of Civil Procedure 15(a) provides that leave to amend 'shall be freely given when justice so requires,' it 'is not to be granted automatically.'" *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 739 (9th Cir. 2013) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)). One exception to the general rule of liberality is when amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Smith v. Pac. Props. & Dev. Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004). Other factors to be considered by the court include bad faith, undue delay, prejudice to the opposing party, and whether the plaintiff has previously amended its complaint. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

If a court reasonably concludes that further amendment of a complaint would be futile, it "does not err in refusing to grant leave to amend." *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013). Leave is properly denied when the amendment "d[oes] not allege sufficient facts that amount to more than a sheer possibility that [Defendants have] acted unlawfully." *Sylvia Landfield Trust*, 729 F.3d at 1196; *see also Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (leave to amend should not be granted if the court "determines that the pleading could not possibly be cured by the allegation of other facts") (internal quotation marks and citation omitted); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend should be denied when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency"). Discretion to deny leave to amend is "'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights*

*Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)); *see also Sylvia Landfield Trust*, 729 F.3d at 1196 (affirming denial of leave to amend where court permitted two prior amendments).

**B.   DISCUSSION**

    **1.   Futility of Amendment**

The additional allegations Upstream now proposes in its motion for leave to amend fall into three categories: (1) allegations regarding the "intent" of the parties entering into a prior settlement agreement and the intent of the government in transferring the property to the City; (2) the City's alleged lack of good faith in negotiating possible alternative proposals; and (3) allegations that the City's disapproval of the casino project under its CEQA authority were pretextual. The Court finds that the additional allegations proposed repeat the arguments it made previously in opposition to the motion for judgment on the pleadings, and do not lend any new support to the claims Upstream attempts to allege. Thus, amendment to add these additional allegations would be futile. The Court looks to each category of allegations in turn.

        *a.   Intent of the Drafters of the Settlement Agreement and Land Transfer Agreement*

Plaintiff's proposed amendments to add allegations regarding the "intent" of the drafters of the settlement agreement (Proposed 4thAC at ¶¶ 65-72) and the "intent" of the federal government in transferring the property to the City (*id.* at ¶¶ 53 & 54) would be futile. The argument that the settlement agreement was meant only to ensure the LDA complied with CEQA, not to give the City "unfettered discretion that supplanted its obligations under the LDA," was raised previously by Plaintiffs in their opposition to the motion for judgment on the pleadings. (Dkt. No. 154 at 2-3, 8-9, 16.) The Court finds this argument no more persuasive now than it did then.

First, extrinsic evidence cannot modify an agreement that is unambiguous on its face. *See* Cal. Civ. Proc. Code § 1856; *Cerritos Valley Bank v. Stirling*, 81 Cal. App. 4th 1108, 1115-16 (2000). As the Court previously observed, neither the Settlement Agreement nor the LDA required

6

1 the City to approve any project alternative. To the contrary, all alternative proposals were subject to
2 the City's discretionary approval, both as a matter of contract and a matter of CEQA. (Order at 12.)[1]
3 Further, when conduct is permitted expressly by the contract, such conduct cannot be bad
4 faith. *Carma Developers Inc. v. Marathon Dev't Cal.,* 2 Cal. 4th 342, 374 (1992) ("[I]f defendants
5 were given the right to do what they did by the express provisions of the contract there can be no
6 breach" of the covenant of good faith and fair dealing) (internal citation omitted). Nothing in the
7 proposed amendments concerning the "intent" of the Settlement Agreement or the "intent" in
8 transferring the land to the City alter the plain meaning of the LDA and Settlement Agreement, both
9 of which gave the City discretion to reject Upstream's proposals.

*b.     Lack of Good Faith in Negotiating Alternative Proposals*

Upstream proposes to add allegations that the City failed to negotiate in good faith for an alternate proposal pursuant to Section 2.8 of the LDA. (Proposed 4th AC at ¶¶ 84-116.) In part, the proposed allegations describe a series of communications and meetings about alternative project proposals held between Upstream and the City in the Fall of 2011. (Proposed 4thAC ¶¶ 86, 88, 102-112.) Other allegations are to the effect that the City did not provide "input" at the outset of the negotiations; that it advised "Upstream to bring its counsel to the meeting, signaling… that the City was more concerned about setting up its legal positions;" that its communications indicated the City was only going to take a passive role as a "listener;" and that the City's participation in the process was merely "lip service." (Proposed 4th AC ¶¶ 90-94, 102-112.)

Taking the proposed allegations to be true, and affording all reasonable inferences in its favor, Upstream still has not offered facts sufficient to state a claim for breach of Section 2.8 or

---

[1] Indeed paragraph 51 of Upstream's Proposed 4thAC acknowledges that the City retained discretion *not* to approve any project, though that alternative *seemed* unlikely at the time the parties entered into the LDA. (Proposed 4thAC at ¶ 51 [emphasis supplied].)

breach of the covenant of good faith and fair dealing.[2]  To the contrary, the proposed amendments would only provide additional support to the Court's prior conclusion: that negotiations occurred, the City considered Upstream's alternative proposal, and the City determined, more than 120 days after its rejection of the casino project under CEQA, that the alternative proposal was unacceptable due to the level of subsidies that it would have required.  (Proposed 4thAC at ¶¶ 100-112.)  Upstream's proposed amended complaint casts the City's participation in the negotiations in a negative light, alleging: that the City's lack of input on the proposals and bringing counsel to negotiations "signaled" that it was not serious about considering alternatives; that it was "terse" in its communications; and that it only paid "lip service" to Section 2.8's requirement that it consider alternatives. (*See, e.g.,* Proposed 4thAC at ¶¶ 90, 93, 94, 104, 106.)  These characterizations belie the *facts* Upstream alleges: that the City participated in the process as it was required to do.  The City was not required to approve any proposal by Upstream, as both the LDA and the Settlement Agreement specified.  Rather, Section 2.8 required that the City and Upstream negotiate "exclusively in good faith" for a period of time following the City's rejection of the casino project.

"A contract to negotiate an agreement is distinguishable from the ultimate agreement that parties hope to eventually reach." *Cedar Fair, L.P. v. City of Santa Clara*, 194 Cal. App. 4th 1150, 1171 (2011).  The "duty to *negotiate* in good faith does not encompass an automatic duty to approve the final deal." *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Grp., Inc.*, 873 F.2d 155, 159 (7th Cir. 1989) (emphasis in original).  Rather, the obligation to negotiate in good faith prohibits "one party from renouncing the deal, abandoning the negotiations, or insisting on conditions that do not conform to the agreement." *Id.* at 158.  It "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation,* 11 Cal.App.4th 1026, 1032(1992).  Nothing in the duty to negotiate in good faith requires the parties to greet the other's

---

[2] Upstream also argues that the Court made improper fact determinations in its prior Order, since the question of "good faith is ultimately a question of fact," citing *Glaire v. La Lanne-Paris Health Spa, Inc.*, 12 Cal. 3d 915, 927 (1974).  Upstream is mistaken about the basis for the Court's prior order.  There, as here, the Court's ruling considers only Upstream's allegations and the matters properly the subject of judicial notice.  While the ultimate determination of whether a party exercised good faith is a determination of fact, Upstream must meet the basic pleading requirements in order to state a claim, *i.e.*, Upstream must allege facts to state a *plausible* claim.

8

proposals with enthusiasm or to agree with what is offered. *Cf. Alliance Atlantis Releasing Ltd. v. Bob Yari Prods.*, CV085526-GW SSX, 2010 WL 1525687 at *12 (C.D. Cal. Apr. 12, 2010) (negotiating in good faith does not mean only proposing such terms as the other party would be happy with, since that would turn the normal negotiation process on its head). Assuming them to be true, the allegations here would not, as a matter of law, establish a plausible claim that the City breached its obligation to negotiate in good faith.

Further, Upstream seeks the opportunity to add allegations that the City was barred from "reject[ing] Upstream's proposal outright and certainly not on this sham basis of its inability to commit to unspecified 'levels of subsidies'" (Proposed 4thAC ¶ 113.) The allegation that the basis for rejecting the alternative was a "sham" is nothing more than argument, unsupported by facts. *See Faulkner v. California Toll Bridge Auth.*, 40 Cal. 2d 317, 329 (1953) ("adjectival descriptions" of an agency's actions as "arbitrary, capricious, fraudulent, wrongful and unlawful" are mere conclusions and insufficient to state a claim).

### c. Additional Allegations Concerning Denial of CEQA Approval

Finally, Upstream attempts to add allegations that the City's rejection of the casino project under CEQA was improper. First, it offers additional allegations regarding the City's approval of other projects under CEQA via a statement of overriding considerations or a negative declaration, and that Upstream expected the City to do the same here. (Proposed 4thAC at ¶¶ 73, 119-121). Second, Upstream offers additional allegations that the City's exercise of discretion under CEQA was a premature and pretextual, since it had decided not to allow a casino project "without any real evaluation of the environmental impacts" and without considering another project. (Proposed 4thAC at ¶121, see also ¶¶ 103, 117, 118).

The majority of the proffered allegations are merely argument, not facts. Moreover, these allegations are directed at the CEQA approval process. As the Court previously found, any challenge to the City's disapproval of the casino project under CEQA—whether on grounds that the disapproval was pretextual, premature, or an improper failure to adopt a statement of overriding considerations—is a challenge required by law to be made by way of a writ petition. *Mission Oaks Ranch, Ltd. v. Cnty of Santa Barbara*, 65 Cal. App. 4th 713, 722 (1998) (barring developer's contract

breach claim against county based on allegedly improper EIR when developer had not challenged the EIR). Having failed to bring a timely CEQA challenge, Upstream cannot now allege that same challenge in the guise of a breach of contract or breach of good faith and fair dealing claim.

### 2. Additional Factors Concerning Leave To Amend

In addition to the futility of amending in the manner proposed by Upstream, the Court finds that other factors favor denial of leave to amend. Here, Upstream has amended the complaint three times previously. Upstream filed its original complaint March 16, 2012, and then filed a First Amended Complaint July 2, 2012. Additional amendments to the Second Amended Complaint were made in response to the City's motion for judgment on the pleadings. The City then filed another motion for judgment on the pleadings directed to the Third Amended Complaint, which the Court granted. The number of prior amendments weighs against granting the motion.

### III. CONCLUSION

Upstream's Motion for Leave to File Motion for Reconsideration of this Court's December 12, 2013 Order is **DENIED**. Upstream's Motion for Leave to File a Fourth Amended Complaint is **DENIED**.

The stay of the U.S. Defendants' claims, entered January 29, 2014, is **DISSOLVED**. This matter is set for a case management conference **September 8, 2014** at 2:00 p.m.

This Order terminates Docket Nos. 219 and 221.

**IT IS SO ORDERED**.

Date: July 24, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**