UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GUIDIVILLE RANCHERIA OF CALIFORNIA, AND UPSTREAM POINT MOLATE LLC**,<br><br>          Plaintiffs,<br><br>     **vs.**<br><br>**THE UNITED STATES OF AMERICA, SALLY JEWELL,** *et al.***,**<br><br>And<br><br>**THE CITY OF RICHMOND,**<br><br>          Defendants. | Case No.: 12-cv-1326 YGR<br><br>**ORDER GRANTING CITY'S MOTION FOR ATTORNEYS' FEES** |

Defendant City of Richmond ("the City") has filed its Motion for Attorneys' Fees and Costs (Dkt. No. 255), to which Plaintiffs the Guidiville Rancheria of California ("the Tribe") and Upstream Point Molate, LLC ("Upstream") have filed oppositions. The Court has ordered and reviewed supplemental briefing and has heard oral argument on the motion.

Having carefully considered the papers submitted and the pleadings in this action,[1] and the arguments of the parties, the Court **ORDERS** that the Motion is **GRANTED** and the City is entitled to attorneys' fees in the amount of **$1,927,317.50** as against Plaintiffs Upstream and Guidiville Rancheria. The reasons follow.

---

[1] Plaintiffs object to the City's reliance on declarations submitted by Sanford Jay Rosen stating his opinions on the reasonableness of the fee request and billing. The Court agrees that Rosen's opinions are not helpful to the Court on any factual issues in dispute in this motion, and that his legal opinions are not admissible. The Court has not considered his declaration in reaching this decision. To the extent the motion sought a costs award for the work performed by Rosen as an expert, that request is **DENIED**.

## I. STANDARDS APPLICABLE TO THIS MOTION

The district court has broad discretion to determine a reasonable award of attorney fees, and must provide "a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *see also Hall v. Bolger,* 768 F.2d 1148, 1151 (9th Cir.1985) (court should provide an explanation of the reasonable hours and hourly rate it uses to arrive at fee award). However, a court is under no obligation to "make findings as to each of defendants' specific objections." *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992).

In the Ninth Circuit, courts generally utilize the lodestar method to determine reasonable attorneys' fees. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir.2002); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262.

In calculating a reasonable number of hours, the applicant must justify his or her motion by submitting evidence supporting the hours worked and the rates claimed. *See Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The court must review the time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The court may reduce these hours if it believes the documentation to be inadequate, if the hours were duplicative, or if they were either excessive or unnecessary. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986); *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012). Courts have discretion to reduce hours where billing records are so vague or general as to frustrate the court's efforts to determine whether the hours were, in fact, reasonable. *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

The Court's determination of reasonableness also considers the hourly rates claimed. Generally, fees must be calculated according to the prevailing market rates in the forum district. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates

are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (alteration in original) (quoting *Jordan*, 815 F.2d at 1263). A court may rely on its own experience to determine whether the hourly rates and the expended number of hours are reasonable. *Van Gerwen*, 214 F.3d at 1045.

In its opposition to the instant motion for attorneys' fees, Plaintiffs concede that the City is the prevailing party and is entitled to recover its attorneys' fees, and that Morrison & Foerster's hourly rates are reasonable. Thus, Plaintiffs' arguments focus on the number of hours billed. In addition, the Tribe raises a tribal sovereign immunity defense as a bar to its liability for fees.

## II. BACKGROUND

The City seeks an award of attorneys' fees in the amount of $2,149,370.00[2] jointly and severally against Upstream and the Tribe.[3] The City's claim for attorneys' fees is based on the contract Plaintiffs alleged in their complaint, the Land Disposition Agreement (LDA). The LDA underlies the claims between the parties and was the basis upon which Plaintiffs alleged entitlement to attorneys' fees in the complaint. (Third Amended Complaint, Dkt. No. 91 ("TAC") ¶ 105.)

Preceding this motion was a judgment on Plaintiffs' claims against the City, entered after a lengthy and somewhat tortuous path from the filing of the original complaint against the City and the Federal Defendants nearly three years earlier, on March 16, 2012. After the filing of the original complaint, pursuant to the stipulation of the parties, a First Amended Complaint was filed July 2, 2012. (Dkt. No. 23.) The City filed a motion for judgment on the pleadings in November 20, 2012. (Dkt. No. 35). On December 19, 2012, the parties stipulated to permit Plaintiffs to file a Second Amended Complaint which mooted that November 2012 motion. (Dkt. No. 44, 45.) On February

---

[2] The motion papers stated the total sought to that date as $2,149,370.00. Based upon billing records submitted in the supplemental papers, the revised total for those timekeepers included in the fee request was $2,235,956.25.

[3] The City also sought costs in the amount of $156,259.26 in connection with the motion. However, because the City also submitted a costs bill and Plaintiffs submitted objections, the Clerk of the Court issued a determination of the Costs bill on May 4, 2015. (Dkt. No. 283.) Thus, the Court **DENIES** the request for costs as moot.

3

1 11, 2013, the City filed its motion for judgment on the pleadings as to the Second Amended

2 Complaint. (Dkt. No. 55.) In response, on March 18, 2013, Plaintiffs filed a motion for leave to file

3 a Third Amended Complaint, resulting in the voluntary withdrawal of the motion. (Dkt. No. 86, 88.)

4 Finally, on June 4, 2013, the City filed a third motion for judgment on the pleadings which

5 proceeded to oral argument and decision. (Dkt. No. 113.)[4] The Court granted the City's motion

6 which disposed of all but one of Plaintiffs' claims against it. (Dkt. No. 212.) Plaintiffs followed that

7 order with a motion for reconsideration, a motion for leave to file a Fourth Amended Complaint, and

8 a motion to amend the judgment or for interlocutory review, all of which were opposed by the City,

9 and all of which were denied by the Court. (Dkt. Nos. 236, 245.) After the parties' stipulated to

10 dismiss Plaintiffs' final remaining claim for declaratory relief and stay Plaintiffs' claims against the

11 Federal Defendants (Dkt. No. 249), a partial judgment on Plaintiffs' claims in favor of the City was

12 entered on February 3, 2015 (and a slightly amended judgment on March 10, 2015). (Dkt. Nos. 252,

13 269.)

## III. DISCUSSION

Under California law,[5] "where the parties have contractually obligated themselves to pay attorneys' fees," California Civil Code section 1717 governs. *Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.,* 250 F.3d 1234, 1237 (9th Cir. 2001) (citations omitted). Section 1717(a) provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Thus, the prevailing party's entitlement to attorneys' fees is reciprocal, even if the agreement does not expressly state. *See PLCM Grp. v. Drexler*, 22 Cal. 4th

---

[4] Interposed during this time period were motions by Plaintiffs seeking to compel additions to the administrative record from the United States Defendants, and a motion by the United States Defendants concerning Plaintiffs' return of an inadvertently produced document. (Dkt. Nos. 100, 105, 164, 188, 189.)

[5] Section 8.6 of the LDA provides that the "Agreement shall be interpreted under and pursuant to the laws of the State of California." (Carr Dec., Exh. K at 19.)

1084, 1090 (2000), *as modified* (June 2, 2000).  There is no dispute that the City is the prevailing party within the meaning of section 1717.

### A.     Rates

Plaintiffs do not challenge the City's rates.  The City puts forward evidence that: (1) rates for attorneys in Morrison & Foerster's San Francisco office range from $350.00 per hour for associates to more than $1,000.00 per hour for partners; (2) Morrison & Foerster entered into a special fee arrangement with the City because it is a public entity; and (3) pursuant to that fee arrangement, the City agreed to pay Morrison & Foerster a blended rate for all attorney time, ranging from $550.00 to $595.00 per hour over the course of the representation in this action.

### B.     Hours

Plaintiffs attempt to minimize the amount of work that was required of the City in this action by arguing that there was one motion for judgment on the pleadings that resulted in dismissal, and a "couple of" subsequent procedural motions which involved "almost no response by the City." (Upstream Supp. Oppo., Dkt. No. 277, at 5:24-26.)  This cursory summary of the history of the case is disingenuous.

The Court has reviewed the time records submitted here in painstaking detail and in conjunction with a review of the filings and procedural history of the case.  The City prepared three motions for judgment on the pleadings before a motion was finally heard on its merits.  The first motion was fully briefed before the parties stipulated to the filing of another amended complaint. The second motion for judgment on the pleadings was, again, fully briefed, only to be followed by a motion by the Plaintiffs for leave to file a Third Amended Complaint.  The City promptly filed a notice of non-opposition to this request to amend, and a notice of withdrawal of the motion for judgment on the pleadings.  Even after the third motion for judgment on the pleadings was granted without leave to amend, Plaintiffs filed three additional motions to which the City filed responsive briefs.  While the Court does observe some overlap in the issues between the successive motions, there were also changes in the allegations between the various iterations of the complaint, requiring additional research and briefing.  The Court agrees with the City that Plaintiffs' "moving target" strategy increased the costs of litigation.

5

The record also establishes that the City expended substantial time responding to hundreds of discovery requests from Plaintiffs, and reviewing and producing tens of thousands of pages of documents from over 30 custodians. The discovery issues in the case meant that counsel were required to spend time on meet-and-confer letters, face-to-face meetings, and appearances at discovery conferences before the magistrate judge. The contentiousness of the discourse on the part of certain of Plaintiffs' counsel appears to have increased fees incurred in this area.

The Court further notes that the City reduced its requested fees by eliminating certain timekeepers with very few hours, and by not seeking fees for time expended by counsel in the City Attorneys' Office. However, based upon a detailed review of the records, the Court nevertheless finds that some reductions are warranted where time entries were vague or excessive in the Court's estimation. Further, the Court's review of the time records reveals some duplication of attorney time, particularly in instances of multiple attorneys drafting and revising the same brief at the same time as well as significant ramp-up time when new associates were brought into the case.[6]

The Court attaches hereto Exhibits A (Attorneys' Fees), B (Paralegal Fees), and C (eDiscovery Manager Fees), setting forth the reduced hours per billing month after the Court's review and reduction of hours. These numbers represent the hours after reductions were taken based upon a line-by-line review of the billing records. In the aggregate, the reductions made by the Court represent a reduction of 15.6% in attorney hours over those in the bills submitted and an 8% reduction for paralegal and eDiscovery manager hours. Thus, the Court finds reasonable an overall

---

[6] Plaintiffs' argument that the billing records should be reduced "across the board" for block billing or billing in quarter hour increments, based upon *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942 (9th Cir. 2007), is not persuasive. In *Welch*, the Ninth Circuit reversed and remanded the district court's 20% across-the-board reduction for block billing to all of counsel's hours, finding that such a reduction was proper only if the court explained how the reduction fairly balanced the hours that were not block billed. *Id.* at 948. The Ninth Circuit upheld an additional 20% reduction for billing in quarter-hour increments only because the record indicated that the district court had "expressly correlated its reduction for quarter hour billing to Kantor & Kantor's actual over-billing." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007). The Court has conducted a careful review of the records here and does not find an across-the-board reduction warranted, much less the sweeping reductions put forward by Plaintiffs.

6

reduction of 12.8% of the total hours submitted in the bills, resulting in a 13.8% reduction in the total fees.

Plaintiffs argue that the City's fee agreement with the Morrison & Foerster firm limits the City's total payments to the firm and should cap any fee award here, offering two agreements found on the City's website. (*See* O'Keefe Dec., Dkt. No. 270-1, at 3-4 and Exhs. 2, 3.) Plaintiffs cite no authority for the notion that this fee agreement imposes a limit on the amount of fees recoverable as a prevailing party under Civil Code section 1717. Further, the proffered evidence of a fee agreement does not contradict the evidence submitted by the City's counsel here that "[t]here is no cap on the amount of legal fees that the City is obligated to pay Morrison & Foerster in connection with this litigation and the City, to date, has paid over $2 million in legal fees and costs to Morrison & Foerster because of this litigation." (Supp. Declaration of Christopher Carr, Dkt. No. 275, ¶ 2.) The Court finds no basis for limiting the fee award on account of the fee agreements proffered by Plaintiffs.

C. **Lodestar Total**

The following summary tables show the total hours per timekeeper that the Court finds to be reasonably incurred, and the lodestar amounts based upon the applicable rates:

| Timekeeper | Total Hours Sought | Total Hours Awarded |
|---|---|---|
| Arturo Gonzalez | 125.25 | 118.75 |
| Chris Carr | 789.75 | 677.75 |
| Shaye Diveley | 694.50 | 608.75 |
| Travis Brandon | 536.00 | 399.75 |
| Alejandro Bras | 58.50 | 43.5 |
| Navi Dhillon | 137 | 119 |
| Dan Gershwin | 88.75 | 76 |
| Ian Andrew Johnston | 72.25 | 59.25 |
| Sue Landsittel | 562.00 | 472.5 |
| Mary (Natalie) Naugle | 46.25 | 46.25 |
| Andrea McAfee (Paralegal) | 1,354.25 | 1,246.75 |
| Bethany DeRuiter (eDiscovery Manager) | 184.00 | 181 |

| Timekeeper Category | Total Hours Awarded | Lodestar at Applicable Rate |
|---|---|---|
| Attorneys | 2,621.5 | $1,482,471.25 |
| Paralegal | 1,246.75 | $392,036.25 |
| eDiscovery | 181 | $52,810.00 |
| **Grand Total** | | **$1,927,317.50** |

### D.     Tribe's Sovereign Immunity Defense

The Tribe argues that it has sovereign immunity that has not been abrogated or waived such that the City cannot recover attorneys' fees against the Tribe. Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories. *Oklahoma Tax Com'n v. Citizen Band of Potawatomi*, 498 U.S. 505, 509-510 (1991); *Turner v. United States*, 248 U.S. 354, 358 (1919); *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831). The U.S. Supreme Court has admonished that federal courts may not "carv[e] out exceptions" to the broad protections sovereign immunity provides federally-recognized tribal governments. *Michigan v. Bay Mills Indian Community*, __ U.S. __, 134 S.Ct. 2024, 2031 (2014). In light of Supreme Court precedent, the Ninth Circuit employs "a strong presumption against waiver of tribal sovereign immunity." *Demontiney v. United States*, 255 F.3d 801, 811 (9th Cir. 2001); *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 419 (9th Cir. 1989).

Indian tribes may invoke a federal forum, whether to seek affirmative relief or to defend litigation on the merits, while still retaining their sovereign immunity. *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) ("[i]nitiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy," but it does not waive immunity to all "related matters, even if those matters arise from the same set of underlying facts"). Offsets and claims for "recoupment," which might otherwise be characterized as compulsory counterclaims, can be asserted in response to a lawsuit filed by a tribe, but such claims cannot seek relief beyond the breadth of the tribe's claims without running afoul of tribal immunity. *United States v. U. S. Fid. & Guar. Co.*, 309 U.S. 506, 511 (1940) (tribal sovereign immunity waived to the extent necessary to "recoup on a counterclaim an amount equal to the principal claim" by the tribe, but no greater).

The City contends the Tribe has consented to the jurisdiction of this Court and has admitted that the terms of the LDA apply to it. The allegations of the TAC are that the "Tribe, Upstream, and the City entered into a written contract memorialized in the LDA […] of which The Tribe was an intended third party beneficiary." (TAC ¶ 102.) The Tribe further alleged that the City breached the LDA and that it was entitled to more than $750 million in damages and reasonable attorneys' fees and costs, as provided by the LDA. (TAC ¶ 105.) The City therefore argues that, having filed suit to enforce the LDA and obtain attorneys' fees incurred in doing so, the Tribe has waived the sovereign immunity it otherwise would have enjoyed.

The Court agrees with the City and finds that the Tribe, by asserting a claim for attorneys' fees under the LDA against the City as part of their claim for breach of contract, expressly consented to this Court's jurisdiction to decide the issue of attorneys' fees *against* the Tribe as well. *In re White*, 139 F.3d 1268, 1271 (9th Cir. 1998) (having initiated a claim in bankruptcy, tribe also assumed the "risk of being bound by an adverse determination"). Otherwise "tribal immunity might be transformed into a rule that tribes may never lose a lawsuit." *United States v. Oregon,* 657 F.2d 1009, 1014 (9th Cir.1981) (immunity waived by intervening in fishing rights litigation); *accord Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1245 (8th Cir. 1995) (immunity waived by filing suit to quiet title concerning disputed land).

While the Tribe's mere participation in litigation does not waive sovereign immunity for all counterclaims, or even all compulsory counterclaims of any kind, the claim for attorneys' fees here is not a counterclaim or other affirmative claim on the treasury of the Tribe. Rather, the Tribe's *liability* to the City for attorneys' fees is directly reciprocal of, and arising from, the Tribe's *claim* against the City for attorneys' fees on the contract. Stated differently, the Tribe affirmatively availed itself of the attorneys' fees provision of the agreement. The Tribe cannot now declare that the same provision cannot be construed to operate against it. *Cf. C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 420 (2001) (by agreeing to arbitration provision in contract, tribe waived its sovereign immunity for purposes of consent to arbitration and to enforcement of arbitral awards in court). The nature and scope of the "recoupment" here –

contractual attorneys' fees – does not exceed that sought by the Tribe.[7] Other courts, faced with similar circumstances, have found a waiver of tribal sovereign immunity as well. *See, e.g., In re White*, *supra*, 139 F.3d at 1272 (9th Cir. 1998) (by filing a claim in bankruptcy case, tribe risked the consequence of an adverse adjudication and waived its immunity from such consequence); *Kenneth H. Hughes, Inc. v. Aloha Tower Dev., Corp.*, 654 F. Supp. 2d 1142, 1149-50 (D. Haw. 2009) (since "[the tribe] expressly waived sovereign immunity by virtue of its contractual agreement to proceed before an arbitrator, the arbitrator did not manifestly disregard the law when determining that attorneys' fees was within the scope of the waiver"); *In re Vianese*, 195 B.R. 572, 575 (Bankr. N.D.N.Y. 1995) ("it would be inequitable under the present circumstances to permit [the tribal entity] to pursue its [adversary claim in bankruptcy] without allowing [the bankrupt] to seek to recover attorney's fees and costs as permitted [in the Bankruptcy Code]."); *In re Nat'l Cattle Cong.*, 247 B.R. 259, 268-69 (Bankr. N.D. Iowa 2000) (tribe must withdraw proof of claim in bankruptcy or concede waiver, since "continuing to maintain a Proof of Claim in this case would contradict the Tribe's assertion of immunity").

       The Tribe argues vigorously that: (1) seeking fees under the LDA does not constitute a waiver of its tribal sovereign immunity; and (2) even if the filing of the instant lawsuit constituted a waiver, the LDA still does not establish a basis for the City's fee request since it is neither a party to the LDA nor has it been determined to be a third party beneficiary of the LDA.

       To be sure, the LDA was an agreement between the City and Upstream. And it is true that the Court has had no occasion to determine whether the Tribe is a third party beneficiary of the LDA.

---

[7] "Generally, tribal sovereign immunity is deemed to be coextensive with the immunity of the United States." *Berrey v. Asarco Inc.*, 439 F.3d 636, 643 (10th Cir. 2006). The U.S. Supreme Court has long recognized that when the United States brings suit, it waives its sovereign immunity as to all claims asserted by the defendant in recoupment, *i.e.* claims arising from the same facts and seeking relief in the same kind and measure as the sovereign's claims. *Bull v. United States,* 295 U.S. 247, 260–63 (1935). The waiver of sovereign immunity under these circumstances is based on the notion that recoupment rights arise out of an identity between the claim in recoupment and "some feature of the transaction upon which the [sovereign's] action is grounded." *Bull v. United States*, 295 U.S. 247, 262 (1935). Thus, when a sovereign files a claim against a debtor in bankruptcy, the sovereign waives immunity with respect to adjudication of the claim. *Gardner v. New Jersey,* 329 U.S. 565, (1947).

10

However, the allegations of the TAC convincingly state the Tribe's position that it is a third party beneficiary of the LDA, including the attorneys' fees provision. (*See* TAC at ¶ 105 ["As a result of the City's breaches of the LDA, the Tribe and Upstream, and each of them have suffered losses including… reasonable attorneys fees and costs as permitted by Section 8.8(a) of the LDA"], ¶ 108 (same).) In the TAC, the Tribe alleges as follows:

> 49. The Tribe was an intended third party beneficiary of the LDA. In entering into the LDA, the City and Upstream intended to benefit the Tribe. To wit, the LDA expressly confers rights *and obligations* on the Tribe. *Although the Tribe was not a signatory to the LDA, the Tribe participated in the negotiations* that resulted in the formation or the LDA, the Tribe participated in the negotiations for all six Amendments to the LDA and the Tribe's involvement in the Project was and is vital to its success. The Tribe took many governmental actions and incurred substantial expenditures in reliance upon the City's agreements and representations.

(TAC ¶ 49, emphasis supplied.) The Tribe proceeded to detail particular examples in the LDA to demonstrate that it was an intended third party beneficiary, including that:

- the LDA provides for transfer of the Property from the City to the Tribe so it can be placed in trust with the DOI [Department of the Interior] for gaming purposes in Section 2.1 (TAC ¶ 50)

- the LDA Section 2.1 required the Tribe to enter into a Services Agreement and a First Source Agreement with the City, as a condition of the planned assignment and transfer of the Property to the Tribe (TAC ¶ 51)

- Section 1.4(c), provided that the Tribe would execute a Promissory Note at Closing for $30,000,000 in favor of the City, which was for the majority of the purchase price of the Inland Property (TAC ¶ 52)

- Paragraph 2.9 of the LDA provided that the Tribe may be required to provide evidence of its ability to finance the purchase of the Property (TAC ¶ 53)

- Section 2.7 of the LDA expressly contemplated that the Tribe would submit an application to the United States in furtherance of the Project and request that the United States take the Property into trust for the benefit of the Tribe (TAC ¶ 54)

- Unlike the Services Agreement between the Tribe and the City, negotiated around the same time, the LDA does not include a term stating that the parties did *not* intend for the LDA to benefit third parties or created in third party beneficiary rights, indicating that "[h]ad the City and Upstream intended to

11

> preclude the Tribe from asserting third party beneficiary rights under the
> LDA, they would have included a similar clause in the LDA." (TAC ¶ 55,
> emphasis supplied)

The Court notes that the LDA's "Legal Actions" provision (Section 8.8), on which the claim for attorneys' fees was based, states:

> (a) In the event any legal action is commenced to interpret or to enforce the terms of this Agreement or to collect damages as a result of any breach thereof, the party prevailing in any such action shall be entitled to recover against the party not prevailing all reasonable costs and expenses incurred in such action, including reasonable attorney fees and costs of any appeals.

The term "parties" is not used as a defined term in this provision.[8]

Under the reciprocity provisions of California Civil Code section 1717, "third party beneficiaries may be liable for attorneys' fees as provided under a contract even if they are not signatories to the agreement." *In re Bennett*, 298 F.3d 1059, 1071 (9th Cir. 2002); *see also Real Property Servs. Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 383-84 (1994) ("under the reciprocity concept embodied in Civil Code section 1717, the City, as the prevailing party, was entitled to an award of reasonable attorney's fees against RPS, a nonsignatory plaintiff, who sued under and to enforce the terms of the contract in which RPS was expressly contemplated as a sublessee"), *but see Sessions Payroll Mgmt., Inc. v. Noble Const. Co.*, 84 Cal. App. 4th 671, 674 (2000) (third party beneficiary can claim benefits of agreement, including attorneys' fees, only if that contracting parties intended it to receive such benefits). "Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney's fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." *Real Property*, 25 Cal. App. 4th at 382 (*citing Reynolds Metal Co. v. Alperson*, 25 Cal.3d 124, 128 (1979)).

The Tribe concedes that bringing its complaint herein effected a waiver of its tribal sovereign immunity to some degree. The Tribe "does not dispute that bring the lawsuit against the City binds it to the Court's determination…that the [LDA] was not breached" and that, if the Tribe had prevailed

---

[8] Though the term "City Related Parties" is defined in the LDA, the term "parties" is not. (*See* TAC Exh. 3 [LDA] at Exh. A, "Definitions".)

12

in a claim for money damages, the City could make an offset claim against the Tribe for any monies the Tribe might have owed the City. (Tribe Oppo., Dkt. 271, at 7:18-25.) The question is whether including a claim for attorneys' fees under Section 8.8 of the LDA and Civil Code section 1717 effected an express waiver for a reciprocal claim for attorneys' fees by the City if it were to prevail in the litigation.

The Court finds, based upon these provisions of the LDA, and upon the Tribe's affirmative assertion of rights under the attorneys' fees provision in the LDA specifically, that the motion for attorneys' fees is within the scope of waiver of immunity worked by the filing of the lawsuit herein. The prevailing party's right to attorneys' fees was the inevitable consequence of the Tribe's conduct. By asserting the claim for attorneys' fees under Section 8.8 of the LDA, the Tribe took the risk that it would not prevail on its claims under the agreement, and that liability for the prevailing party attorneys' fees would be the result. Therefore, the Tribe is jointly liable with Upstream for the award of reasonable attorneys' fees.

**IV. CONCLUSION**

Based upon the foregoing, the Court finds that the City is entitled to attorneys' fees in the amount of **$1,927,317.50** as against Plaintiffs Upstream and Guidiville Rancheria.

This terminates Docket No. 255.

**IT IS SO ORDERED**.

Dated: August 18, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**