CROWELL LAW OFFICE– TRIBAL ADVOCACY GROUP
Scott Crowell (*pro hac vice*)
1487 W. State Route 89A, Suite 8
Sedona, AZ 86336
Tel: (425) 802-5369
Fax:  (425) 828-8978
Email:  scottcrowell@hotmail.com

Attorneys for Plaintiff
GUIDIVILLE RANCHERIA OF CALIFORNIA


O'KEEFE & O'KEEFE LLP
Garet D. O'Keefe (SBN 168415)
Amy O'Keefe (SBN 174636)
1068 Cragmont Avenue
Berkeley, CA  94708
Tel.:  (510) 282-0319
Email:  garet@okeefelaw.com

Attorneys for Plaintiff
UPSTREAM POINT MOLATE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE GUIDIVILLE RANCHERIA OF CALIFORNIA, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>THE UNITED STATES OF AMERICA, et al.,<br><br>          Defendants. | Case No. CV12-1326-YGR<br><br>**JOINT REPORT REGARDING EFFORTS TO COMPLY WITH AMENDED JUDGMENT**<br><br>Judge:    Hon. Yvonne Gonzalez Rogers |

In its November 30, 2021 Order re Temporary Restraining Order ("Order re TRO") (Dkt. 430), the Court granted Plaintiffs Guidiville Rancheria of California's ("Guidiville" or "Tribe") and Upstream Point Molate, LLC's ("Upstream") request to reinstate the reporting requirement pursuant to Paragraph 29 of the Amended Judgment for Defendant City of Richmond ("City") and Plaintiffs' efforts to comply with the Amended Judgment. The Order re TRO ordered that Guidiville, Upstream, and the City (collectively, the "Parties") file joint reports every forty-five (45) days. Since the last report, the Parties have participated in the following efforts to comply with the Amended Judgment:

**A. Security, Maintenance, Conveyance, Marketing, and Future Sale or Development of Point Molate per Amended Judgment.**

The deed conveying the Point Molate Property was recorded on August 29, 2022. Representatives of the City, Guidiville, and Upstream continue to confer on the logistics and timing of various actions surrounding the maintenance, conveyance, marketing and future sale or development of Point Molate. Guidiville and Upstream continue to be involved in discussions regarding possible buyers or developers of the developable areas, including a possible sale transaction with the East Bay Regional Park District ("District") discussed below. The City and Guidiville also remain in discussions with the District regarding realignment and improvements to the Bay Trail, including the possible temporary use of a portion of developable areas as a staging area for construction. There are ongoing discussions regarding the need for a number of easements over a portion of developable Lots 10 and 44, and some City-retained lands to better serve the Bay Trail and future site use, and proposed agreements have been drafted.

In addition to the Bay Trail and easement discussions, conversations by the City with the District and separate conversations by Guidiville with the District have resulted in the preparation of a nonbinding Letter of Intent ("LOI") that could possibly lead to the public acquisition of the Point Molate Property, including the developable portions (Lots 1 through 44). The California Legislature has earmarked $36 million to support the District in the acquisition and cleanup of

Point Molate for open space, parks, and recreation purposes. On July 12, 2024, the City approved the nonbinding LOI and on July 16, 2024, the Board of the District approved the nonbinding LOI. The nonbinding LOI provides the general terms under which the parties would proceed to enter into a formal Purchase and Sale Agreement for the property, including a requirement to return to this Court to further amend the Amended Judgment in this action.

The City continues to make progress regarding needed security and maintenance of the historic buildings and the developable parcels, discussed in further detail is Section C, below. The Parties are continuing to meet and confer as to the status and progress on these matters.

**B. Point Molate Alliance v. City of Richmond, Contra Costa Co. Sup. Ct. Case No. N20-1528 (filed October 2020); First App. Dist. Case Nos. A164906 and A165758 (filed March 2021).**

In October 2020, Point Molate Alliance, SPRAWLDEF, Citizens for East Shore Parks, North Coast Rivers Alliance, and numerous other community groups and individuals filed two Related Petitions for Writ of Mandate challenging the City's September 2020 certification of the Subsequent Environmental Impact Report ("SEIR") and land use approvals for Winehaven's Point Molate Mixed-Use Development Project ("Project"). While raising numerous claims, the Petitions' primary causes of action asserted violates of the California Environmental Quality Act ("CEQA"). As reported earlier (Dkt. 441), the City, along with Guidiville and Upstream as amicus defended the SEIR and land use approvals vigorously at the Superior Court level, and the Superior Court on March 15, 2022, entered Judgment Denying the Petitions for Writ of Mandate in full. Petitioners Point Molate Alliance and North Coast Rivers Alliance, et al., filed notices of appeal to the First District Court of Appeal on March 21 and 23, 2022, respectively (Case Nos. A164906 and A165758).

The First District Court of Appeal issued a Final Opinion and Order Modifying Opinion and Denying Rehearing on November 27, 2023. In compliance with the Opinion and Order of the Court

of Appeal, on January 22, 2024, the Superior Court entered a new Judgment and Writ of Mandate ordering the City to:

1. Set aside and vacate its approvals of the Project, including Resolution No. 97-20 and Ordinance Nos. 22-20 and 23-20 adopted on September 8 and 15, 2020, respectively;

2. Decertify the SEIR for the Project (SCH No. 2019070447) *for the purpose of addressing the deficiencies identified in the Court of Appeal's Opinion*; and

3. File a Return to the Writ within 120 days of the Judgment, *which Return shall specify the action(s) taken to comply with the terms of the Writ*. (Emphasis added.)

On May 7, 2024 the City of Richmond City Council voted to approve Resolution No. 34-24, taking the following actions:

a) Vacating and setting aside Resolution No. 97-20, under which the City Council certified the SEIR and approved the General Plan Man and text Amendments, Disposition and Development Agreement, Vesting Tentative Tract Map, Conditional Use Permit, and Major Design Review (PLN 20-57) for the Project;

b) Vacating and setting aside Ordinance No. 22-20, under which the City Council approved the rezoning of the Project Site to Planned Area (PA) for the Project; and

c) Vacating and setting aside Ordinance No. 23-20, under which the City Council approved the Development Agreement for the Project.

In the Return, the City also concluded that, "By these actions, Respondent [City] *has complied* with the Writ issued by this Court in the above-captioned matter." Return, at p.3 (emphasis added). The Parties last met on March 7, 2024, to discuss next steps in light of the Judgment and Writ and any further litigation concerning the Point Molate Property, as well as the City's ongoing efforts to comply with the Amended Judgment.

Further, since the last status report, the Court entered the Order Discharging the Peremptory

Writ of Mandate on June 10, 2024, and the City and the Petitioners have reached a settlement regarding attorney fees and costs. A Notice of Settlement of Attorney Fees was filed with the Contra Costa County Superior Court on June 20, 2024.

**Plaintiffs Tribe and Upstream Supplemental information**: The Court of Appeal's decision noted that the City's efforts to produce, circulate, and certify the Point Molate 2020 Supplemental Environmental Impact Report ("SEIR") passed legal muster except for two modest mitigation deficiencies: (1) cultural resources mitigation, and (2) evacuation response. As a result of the two SEIR mitigation deficiencies, the Court of Appeal ordered the set aside of the City's September 2020 SEIR certification and approval of the related project development entitlements over approximately thirty percent (30%) of the Project site, for the purposes of addressing the deficiencies.

In the City's Return, the City reports that in compliance with the Judgment and Writ, the City approved the "set aside" Resolution, concluding that, "By these actions, Respondent [the City] *has complied* with the Writ. …." *id.*

The Tribe and Upstream assert the City's Resolution and Return filed with the Superior Court only partially *complied with the Writ*. The Superior Court ordered decertification of the SEIR "*for the purpose of addressing the deficiencies*" noted in both the Judgment and Writ. The City must now address the two SEIR mitigation deficiencies in compliance with the CEQA. The City's Return does not comply with the Superior Court's directive to both decertify the SEIR *and* address how the City plans to correct the two SEIR mitigation deficiencies. This is the City's affirmative obligation and requirement under paragraphs 37 and 38 of this Court's Amended Judgment (*see* Dkt. 410 at 10; filed Nov. 21, 2019). This Court's Amended Judgment also makes clear that the City is responsible for the "Entitlement Costs," which paragraph 13 defines to explicitly include costs directly concerning entitlements and compliance with CEQA…." *See* Dkt.

410 at 5. Despite these City's affirmative obligations, the City's Resolution and Return are silent on what steps the City has taken, or is taking, to promptly address the two SEIR mitigation deficiencies noted in the Superior Court's Judgment and Writ. Absent such disclosures, the City is not in compliance with the Superior Court's Judgment and Writ.

The Tribe and Upstream maintain that the City must still take the corrective action needed to address the two SEIR mitigation deficiencies in compliance with CEQA, to recertify the SEIR with adjusted mitigation measures and re-approve the project entitlements. The City's actions and inactions substantially devalue the subject property, frustrating the intended mutual benefits of selling the subject property in accordance with the Amended Judgment.

The Tribe and Upstream also do not agree with the City's position, stated below, that the City's current discretion in approving projects enables the City to make unfettered decisions and to take action that severely devalues the market value of the subject property. Indeed, the City below, makes clear that the City believes it "is not obligated under the Amended Judgment to re-certify the SEIR and re-approve the Project presented by a third-party applicant (Winehaven Legacy, LLC) who is no longer involved in the Project." In an open session of the recent City Council[1] on July 12, 2024, the City Attorney stated that the City intends to keep the property in its current unentitled status (and not take action to correct the deficiencies to the SEIR) because Winehaven Legacy cannot, accordingly, claim its efforts resulted in added value to the property, which is at issue in pending litigation, *Winehaven Legacy, LLC v. City of Richmond* (Contra Costa Co. Sup. Ct. Case No. C22-01081):  "Those approvals that the developer had obtained upon which they claim the value of their project, were rescinded. . . .  We feel that it is clear that the Developer

---

[1] The video stream is available and posted on the City's official web page, ci.richmond.ca.us.  As of the date of this submission, that transcript, which is routinely posted, is not yet posted to the City's web page.

did not produce value given that the EIR was reversed." Notably, at no point in the City Attorney's lengthy statement, did he make mention that the Superior Court ordered decertification of the EIR "*for the purpose of addressing the deficiencies.*"

The Tribe and Upstream maintain that the City is responsible for such devaluation. We acknowledge that paragraph 16 of the Amended Judgment requires the City to "consider" the "Discretionary City Approvals, as defined Paragraph 8" of the Amended Judgment. Consistent with paragraph 16, the City has already taken the action to certify the SEIR, adopt a mitigation plan, approve findings and overriding considerations, and adopt discretionary project approvals. Those approvals were largely upheld at both the state court trial and appellate court levels (except for the two SEIR mitigation deficiencies). While the path forward is not yet clear, the Tribe and Upstream will continue to pursue resolution of this situation with the City, but may bring the matter to the Court should that become necessary to enforce their respective rights and obligations under the Amended Judgment.

**Defendant City's Supplemental information**: Upstream and Guidiville insist that under the provisions of the Amended Judgment, the City is obligated to re-approve the Project Molate Project put forth by Winehaven Legacy, LLC and re-certify the SEIR after correcting the deficiencies identified by the Court of Appeal; but the City disagrees with this reading of the Amended Judgment.

Section 16 of the Amended Judgment required the City to "consider"—not approve—a development project satisfying the criteria of Section 8, and to do so within a certain timeframe. Under Section 21, the City was required to market the development areas of Point Molate for sale to one or more qualified developer(s) or builder(s). If such marketing proved unsuccessful, Section 24 obligated the City to sell the development areas to Guidiville were provided the option, upon acquiring the development areas, to "pursue" development consistent with the discretionary City

approvals or to seek "additional or new entitlements"; however, the Amended Judgment reserved to the City "sole discretion" to grant or deny such entitlements. Critically, Sections 37 and 38 confirmed that the Amended Judgment did not constitute "approval of a project" and did not "grant any entitlements for development at Point Molate. . . ."

The City undertook substantial efforts to fulfill its obligations under the Amended Judgment. First, the City employed commercially reasonable efforts to market and sell the property to Winehaven Legacy, LLC. Second, the City Council in September 2020 certified the SEIR and approved the Point Molate Mixed-Use Development Project put forth by Winehaven Legacy, LLC. Third, the City vigorously defended the Project's entitlements at trial and on appeal, even though Winehaven Legacy, LLC had failed to fully indemnify and defend the City as required under its development entitlements. Fourth, when Winehaven Legacy, LLC failed to close escrow within the timeframes established in the Amended Judgment, the City promptly sold the development areas to Guidiville consistent with Section 24.

While the City must consider a future development application presented by Guidiville, Upstream, or a third-party developer or builder, the City is not obligated to approve a particular development proposal—the Amended Judgment vests the City with the sole discretion to approve or deny future applications for particular entitlements. It follows, therefore, that the City is not obligated under the Amended Judgment to re-certify the SEIR and re-approve the Project presented by a third-party applicant (Winehaven Legacy, LLC) who is no longer involved in the Project. Indeed, there is no pending application for development before the City and the City is not otherwise obligated to fund and pursue that particular Project. With Winehaven Legacy, LLC's failure to close escrow, it is now incumbent on Guidiville or Upstream to market the development areas for sale to a third party and/or pursue further development entitlements, which the City may

ultimately approve or deny in its discretion. In the meantime, the Parties are continuing to work in good faith to come to a mutual resolution of interests and development proposals for Point Molate.

Further, the City takes issue with Plaintiffs' summary of the current posture of the Parties and statements at the July 12, 2024 City Council meeting to adopt the LOI. Again, the nonbinding LOI provides the general terms under which the parties thereto (including the District) would proceed to enter into a formal Purchase and Sale Agreement for the development areas of the Point Molate Property. The key terms include: (i) opening of an escrow account for the District to purchase all of the development parcels from the Petitioners at a purchase price of $ 40 million (from a combination of $36 million in funds allocated in State Grants and $4 million allocated by the District); (ii) escrow is intended to close and the purchase to be completed on or before the end of 2024; (iii) the City would forgo its 50% allocation of the purchase price; and (iv) satisfaction of all conditions in the Amended Judgment. The City's waiver of rights to 50% of the sale price is contingent on funding approvals by the Coastal Conservancy, Petitioners approving the transaction anticipated in the LOI, and the close of escrow within the timeline anticipated in the LOI. Fulfilment of the terms in the LOI are also intended to include a waiver and release of claims by the Parties under the Amended Judgment. Conversely, if the terms of the LOI are not fulfilled, then the Amended Judgement would remain in place with the City entitled to 50% of proceeds from the sale of the Property.

It is the City's understanding that Plaintiffs agree with the terms of the above-mentioned LOI. Conversely, the characterizations by Plaintiffs above misconstrue the position of the City and do not reflect the constructive and good faith efforts of the Parties to resolve their respective rights and obligations under the Amended Judgment.

C. ***Winehaven Trust v. Point Molate Futures LLC, et al.*, Contra Costa Co. Sup. Ct. Case No. C23-01164 (filed April 12, 2023).**

On or about April 12, 2023, Winehaven Trust, a non-profit headed by former Mayor Tom Butt, filed a lawsuit in Contra Costa County Superior Court against both the City and Point Molate Futures LLC, which is the entity, wholly owned by Guidiville, that holds title to the developable parcels. The lawsuit alleges that the City has failed to maintain structures and premises in the historic district of Point Molate in good repair. On Tuesday, October 3, the Richmond City Council voted to spend $438,000 to repair the more easily repairable structures and apply preventative tarps to the cottages requiring more extensive repairs in order to start repairs in 2024, after the rainy season ends. The City Council action was based on indications from the Winehaven Trust that, if the City properly mitigates and prevents further damages from the El Nino rains this winter, the Winehaven Trust will agree to hold off filing for an injunction and will start discussing longer-term plans. The City is working with an architect to select a contractor to perform maintenance to the cottage roofs. The City had a contractor install tarps to several roofs but has not yet secured a qualified contractor to perform the roof repairs. As of the filing of this Report, Point Molate Futures, LLC has not yet been served. The Tribe remains concerned that the City's actions regarding the structures and premises in the historic district may be inadequate. Although the obligation falls on the City, in the spring of 2024, to facilitate the City's obligations, the Tribe secured a $100,000 grant to assess and identify any lead-based paint or asbestos on the land in question, and continues to seek other grant funding to help restore and stabilize the Historic District and ultimately better market the property.

DATED: July 30, 2024       DOWNEY BRAND LLP

By: /s/ Christian L. Marsh
       Christian L. Marsh

Attorneys for Defendant CITY OF RICHMOND

DATED: July 30, 2024       CROWELL LAW OFFICES – TRIBAL ADVOCACY GROUP

By: /s/ Scott Crowell
       Scott Crowell

Attorneys for Plaintiff GUIDIVILLE RANCHERIA OF CALIFORNIA

DATED: July 30, 2024       GARET D. O'KEEFE
O'KEEFE & O'KEEFE

By: /s/ Garet D. O'Keefe
       GARET D. O'KEEFE

Attorneys for Plaintiff UPSTREAM POINT MOLATE LLC

**FILER'S ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)**

I, Scott Crowell, hereby certify that I am the ECF user whose identification and password are being used to file the foregoing **JOINT REPORT REGARDING EFFORTS TO COMPLY WITH AMENDED JUDGMENT** and that the above-referenced signatories to this joint filing have conferred in this filing.

Dated: July 30, 2024

                                                           */s/ Scott D. Crowell*
                                                           Scott D. Crowell

*Guidiville Rancheria of California, et al. v. United States of America, et al.\United States District Court – Northern District of California Case No.: 12-cv-01326-YGR*

## CERTIFICATE OF SERVICE

I hereby certify that on this day of, July 30, 2024 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are registered on the CM/ECF system:

**JOINT REPORT REGARDING EFFORTS TO COMPLY WITH AMENDED JUDGMENT**

Dated: July 30, 2024

                 */s/ Scott D. Crowell*
                 Scott D. Crowell